Argued and submitted September 29, 1997, affirmed May 27, 1998

## STATE OF OREGON,
*Respondent,*

*v.*

## TERRY SCOTT ROE,
*Appellant.*

(95CR2120MI; CA A92846)

961 P2d 228

Hari Nam S. Khalsa, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Pilar C. French, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

Armstrong, J., dissenting.

.

**EDMONDS, J.**

Defendant appeals from his conviction for unlawful possession of a firearm, ORS 166.250, arguing that the trial court erred when it denied his pretrial motion to suppress evidence of a firearm in his possession. We affirm.

A Douglas County Sheriff Deputy turned on his overhead lights to stop defendant's vehicle after he saw that the license plate light on the vehicle was not working. Defendant did not comply with the signal immediately, passed up several opportunities to pull over, proceeded into an isolated location and then stopped. It was approximately 11:00 p.m. When the officer approached defendant's car, he saw bows and other hunting equipment in the back seat of the car and a box of .22 caliber ammunition on the center console next to defendant. He could also smell the odor of alcohol emanating from the vehicle. The officer asked defendant if there was a gun in the vehicle, and defendant replied that he had a gun under the driver's seat. The gun was not visible to the officer. The officer asked defendant to step out of the car and then retrieved the weapon. In his motion to suppress, defendant asserted that the "search, without consent or a warrant, or a reasonable belief that the defendant posed a threat to the safety of the officer, was an unconstitutional violation of [his] rights." The trial court ruled that under the circumstances, "the officer developed a reasonable suspicion of an immediate threat of serious physical injury," and "he did not have to await a hostile act from the defendant before making his inquiry [about the gun]."

Defendant does not challenge the validity of the traffic stop. On appeal, defendant assigns the trial court's ruling as error, arguing that the "officer had no reason to fear for his safety merely based on the fact that he saw a box of ammunition." He focuses the attack on the lawfulness of the search on the inquiry that led to the search and does not otherwise contest the right of the officer to conduct a search for the gun, once the officer learned that there was a gun in the car. The state counters that the officer's inquiry was permissible under ORS 810.410(3)(b) and for purposes of officer safety.[1]

---

[1] ORS 810.410(3)(d), which was enacted as part of Oregon Laws 1997, chapter 866, section 4, provides that a police officer "[m]ay make an inquiry to ensure the

ORS 810.410(3)(b) provides that a police officer "[m]ay stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation." According to the state, "[i]nquiries made to ensure that the investigation proceeds safely are reasonably related to the process of issuing a traffic citation." In *State v. Senn*, 145 Or App 538, 542-43, 930 P2d 874 (1996), we held that an officer's inquiry for purposes of safety during a traffic stop does not violate ORS 810.410(3)(b) so long as the inquiry is justified by a reasonable suspicion based on specific and articulable facts that there exists an immediate threat of harm to personal safety. Otherwise, an inquiry could impermissibly broaden the scope of the traffic stop and exceed the authority of the officer granted under the statute.

In *Senn*, we noted that the proscription in ORS 810.410(3)(b) against the extension of traffic investigations without reasonable suspicion and the principle that officers may lawfully conduct searches and seizures for purposes of officer safety under Article I, section 9, of the Oregon Constitution, embody similar policies. As the Supreme Court said in *State v. Bates*, 304 Or 519, 747 P2d 991 (1987):

> "[I]t is not our function to uncharitably second-guess an officer's judgment. A police officer in the field must frequently make life-or-death decisions in a matter of seconds. There may be little or no time in which to weigh the magnitude of a potential safety risk against the intrusiveness of protective measures. An officer must be allowed considerable latitude to take safety precautions in such situations. Our inquiry therefore is limited to whether the precautions taken were reasonable under the circumstances as they reasonably appeared at the time the decision was made." *Id.* at 524-25.

We choose not to second-guess the officer's decision to ask about the presence of the gun. The reasonableness of the officer's inquiry depends on the circumstances in which

---

safety of the officer, the person stopped or other persons present, including an inquiry regarding the presence of weapons." However, the statute became effective on October 4, 1997. Because the judgment in this case was entered in March 1996, the statute is inapplicable to this case.

he found himself. Here, the officer was by himself in an isolated area at night, having stopped a vehicle that had passed up opportunities to stop after being signaled to do so and that had driven purposefully into that area. After the officer approached the vehicle, he smelled the odor of alcohol emitting from the car, and the specter of dealing with that potentially exacerbating influence added to the dangerousness of the situation. When he looked into the vehicle, he saw a box of ammunition that was on the center console within the reach of defendant. That observation gave rise to a reasonable suspicion that defendant was in possession of a lethal weapon, also within his reach. That suspicion, combined with the circumstances of the officer's location, the fact that it was late at night and dark, the odor of alcohol from defendant's car and defendant's driving conduct led to a reasonable suspicion that defendant could present an immediate threat of serious physical injury. We hold that the inquiry about whether defendant was in possession of a gun was within the latitude granted to the officer to provide for his own safety under the circumstances as they reasonably appeared at the time. The trial court was correct when it ruled that the officer did not have to wait until defendant threatened or attacked him before he could ask whether defendant had a gun and when it denied defendant's motion to suppress.[2]

We do not reach the issues presented by the state under Ballot Measure 40.

Affirmed.

**ARMSTRONG, J.,** dissenting.

Because I believe that the facts of this case, when examined in light of similar decisions by both this court and the Supreme Court, show that the officer's inquiry about a gun was not justified, I respectfully dissent.

An officer investigating a traffic infraction can conduct a search for weapons if, and *only* if,

---

[2] The dissent says, "I believe that the facts articulated by the state and found by the trial court fall far short of creating a reasonable belief that defendant posed an *immediate* threat to the officer." 154 Or App at 77 (emphasis in original). In his brief, defendant says, "As soon as the officer saw the box of ammunition he had a concern for his safety."

"during the course of a lawful [stop], the officer develops a reasonable suspicion, based upon specific and articulable facts, *that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present.*"

*State v. Knox*, 134 Or App 154, 158, 894 P2d 1185 (1995) (quoting *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987)), *vacated and remanded on other grounds* 327 Or 97 (1998) (emphasis supplied). The same requirement exists for officer *inquiries* as to the presence of weapons. *State v. Senn*, 145 Or App 538, 542, 930 P2d 874 (1996) ("An officer safety inquiry * * * in the course of a traffic stop does not violate ORS 810.410(3)(b), so long as that inquiry * * * is justified by reasonable suspicion as prescribed in *Bates*.").

In this case, the trial court concluded that the officer

"developed a reasonable suspicion of an immediate threat of serious physical injury based upon the following: (a) it was a night time stop; (b) the officer detected an odor of alcohol emanating from the vehicle; (c) the officer observed hunting equipment in the vehicle; and (d) most importantly, the officer saw ammunition in the center console."

The court found the following additional facts, however:

"The officer had never seen the defendant before the night in question. In spite of the fact that defendant had been drinking, he was not under the influence of intoxicants. *In addition, the defendant did nothing to make the officer feel threatened*, and it should be noted that Mr. Roe's two-year-old child was asleep in the car."

(Emphasis supplied.) In my view, those additional findings undermine the trial court's ultimate conclusion.

Although it may be true that the circumstances of individual cases make fact matching a fool's errand, in this case it is instructive to revisit the decisions that have applied the officer-safety analysis to traffic stops. When viewed in light of those cases, the facts of this case clearly did not warrant the officer's inquiry. In *Senn*, the defendant was a passenger in a car that had been pulled over. After the defendant told the investigating officer that he had no identification, the officer asked him to get out of the car so that he could ask for his name out of earshot of the other people in the car, from

whom he would then seek verification. Once Senn was out of the car, the officer asked if he was armed. Other than certain "furtive movements" made by the defendant when the car was pulled over, we determined that there were no specific and articulable facts to support a concern about officer safety. 145 Or App at 545. Accordingly, we concluded that the inquiry exceeded the scope of the traffic stop. *Id.* at 545-56. In *Knox*, the defendant was known to the police officer. He previously had been investigated for delivery of controlled substances, at one time had been a suspect in a homicide and "had a reputation for carrying weapons." 134 Or App at 156. Although the trial court found that the defendant " 'was not acting in any unusually angry or strange manner that would give the officer any immediate concern,' " *id.* at 157, and that he "had never before exhibited any violence towards the police or made threats to them that the officer was aware of," *id.*, it nevertheless denied the defendant's motion to suppress evidence because it concluded that the officer-safety exception to the warrant requirement provided authority for the officer to search for weapons. We reversed, holding that the facts that the court found did not support a conclusion that the defendant posed an *immediate* threat of serious physical injury. *Id.* at 159. In a passage particularly relevant to the present case, we concluded that "mere access to weapons," without further explanation by the state, does not give rise to a reasonable and articulable suspicion of an immediate threat of serious physical injury. *Id.* at 160.

Here, the state has argued that the presence of the box of .22 ammunition gave the officer reason to believe that defendant might be armed. According to the state, that, together with the circumstances of the stop and the lateness of the hour, justified the officer's inquiry. I believe that the facts articulated by the state and found by the trial court fall far short of creating a reasonable belief that defendant posed an *immediate* threat to the officer. *See Bates*, 304 Or at 527. There was no evidence that defendant was uncooperative or belligerent. The fact that he did not stop immediately when signaled to do so by the officer does not, by itself, indicate an unwillingness to cooperate. There was no testimony by the officer, or finding by the court, to indicate anything more than that defendant might have had access to a gun. Mere

access alone is not enough. Neither is the acknowledged fact that police officers face danger in conducting traffic stops. *See, e.g., Maryland v. Wilson*, 519 US 408, 117 S Ct 882, 885, 137 L Ed 2d 41 (1997); *Michigan v. Long*, 463 US 1032, 1049, 103 S Ct 3469, 77 L Ed 2d 1201 (1983).[1] While I agree that there is danger inherent in a traffic stop, it is the *immediate* threat of danger that implicates the officer-safety exception to the warrant requirement.

I dissent.

---

[1] The majority cites *Bates* for the proposition that we will not second-guess an officer's judgment when it comes to the issue of officer safety. What the majority neglects to mention is that in *Bates*, as in *Knox* and *Senn*, the court on appeal concluded that the officer was not justified in making the disputed search. I agree that an officer in the field is often required to make life or death decisions based on scant information, but, like the court in *Bates*, I believe that we must draw the line at some point.