Argued and submitted July 11, reversed and remanded for new trial
September 18, 1996

# STATE OF OREGON,
*Respondent,*

*v.*

# JOHN EDWARD PETERSON,
*Appellant.*

## (94C-20694; CA A88382)

923 P2d 1340

Walter J. Todd argued the cause and filed the brief for appellant.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

## RIGGS, P. J.

Defendant appeals his convictions for carrying a concealed weapon, unlawful possession of a firearm, unlawful possession of a short-barreled shotgun and possession of a controlled substance. ORS 166.240; ORS 166.250; ORS 166.272; ORS 475.992. He assigns error to the trial court's denial of his motion to suppress. We reverse.

On May 5, 1995, at 3:19 p.m., Officer Fineran was driving a marked police car on routine patrol duty in Salem. He saw defendant sitting in a car parked on the opposite side of the street, facing the oncoming flow of traffic. Defendant's car pulled out into the traffic and crossed into Fineran's lane, causing Fineran to stop in order to avoid getting hit. Fineran followed defendant and stopped him after he committed the traffic infraction of turning without signaling.[1]

As Fineran approached defendant's vehicle on foot, he saw defendant "moving around a great deal in the car" and noticed that the movements seemed to be directed toward the passenger seat area. When he reached the car, Fineran saw a jacket on the front passenger seat. Fineran asked defendant, who was alone in the car, some questions related to the traffic stop. As defendant answered the questions, he appeared nervous and was stuttering. Fineran also saw that defendant's eyes were "darting around." When Fineran asked about his demeanor, defendant explained that he was nervous because he had almost hit the officer.

After Fineran had obtained the information he needed concerning the traffic infraction, he asked defendant if he had ever been arrested before. Defendant acknowledged that he had been arrested for possession of a controlled substance. At the same time, defendant became agitated because a pager he was wearing kept beeping. He removed the pager from his belt and threw it across the car into the passenger area. Fineran radioed for assistance and asked defendant if "he had anything in the car that [Fineran] should be aware of or concerned about." Defendant responded negatively.

---

[1] Defendant does not challenge the validity of the stop.

Fineran then asked whether there were any drugs or weapons in the car. Defendant again said no. Fineran asked for permission to search the car and defendant refused. Finally, when Fineran asked defendant a second time if there were any drugs or weapons present, defendant responded that he had a boot knife. At that point, Fineran asked defendant to get out of the car and conducted a pat-down search. During the search, Fineran detected an object in defendant's front pants pocket that felt like a syringe. He removed the contents of defendant's pocket and found a straw containing white powder and two small glass vials. Fineran also seized the knife that was concealed in defendant's boot.

After arresting defendant, Fineran searched the car and discovered a loaded revolver underneath the jacket on the front seat. He also found a sawed-off shotgun in the trunk and some ammunition. A field test conducted on the white powder was positive for the presence of cocaine. Defendant was charged with possession of a controlled substance, unlawful possession of a short-barreled shotgun, unlawful possession of a firearm and carrying a concealed weapon.

Fineran testified that, when he asked defendant whether he had ever been arrested, he was not investigating the traffic infractions nor any other crime. Fineran testified that he had concerns that defendant might be under the influence of drugs or alcohol but that he did not begin investigating another crime until defendant told him that he had a boot knife.[2] Before defendant told Fineran that he had a boot knife, Fineran asked defendant several questions concerning whether there were drugs or weapons in the car. The trial court concluded that Fineran's questioning of defendant regarding his criminal history, and the presence of drugs or weapons, was a search conducted for officer safety.

Defendant filed a pretrial motion to suppress the evidence that Fineran discovered during the course of the stop, arguing that Fineran's search of his person and car exceeded the permissible scope of a stop for a traffic infraction. The state argued that Fineran's actions were justified

---

[2] In addition, Fineran did not ask defendant whether he had been drinking or using drugs and did not ask defendant to perform field sobriety tests.

by a reasonable concern for his safety. The court agreed with the state and denied defendant's motion. Defendant was subsequently convicted as charged after a trial to the court.

■■ On appeal, defendant assigns error to the denial of his motion to suppress. We are bound by the trial court's findings of fact so long as there is constitutionally sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 854 P2d 421 (1993). We review the court's legal conclusions for errors of law. *Id.*

A police officer's authority to stop and detain an individual for a traffic infraction is limited by ORS 810.410(3)(b) to an "investigation reasonably related to the traffic infraction, identification and issuance of citation." As the Supreme Court stated in *State v. Dominguez-Martinez*, 321 Or 206, 212, 895 P2d 306 (1995):

> "an officer who stops a person for a traffic infraction may investigate only that infraction, unless the state can point to some basis other than the traffic infraction to broaden the scope of the investigation. Moreover, it is clear that, after the investigation reasonably related to the traffic infraction is complete, an officer does not have authority under ORS 810.410 to continue to detain the person stopped for the traffic infraction."

*See also State v. Porter*, 312 Or 112, 120, 817 P2d 1306 (1991) ("A search that explores for evidence of other crimes or infractions is not 'reasonably related to *the* traffic infraction * * *.' " (Citation omitted; emphasis in original.)).

Defendant argues that because Fineran had completed his investigation of the traffic infraction, the officer did not have authority to inquire about defendant's criminal history and whether there were drugs or weapons in the car. The state contends that Fineran's questions and the subsequent search were both justified by legitimate officer safety concerns.[3]

---

[3] At the suppression hearing, Fineran testified that he suspected that defendant was under the influence of controlled substances, but the state does not argue that Fineran was attempting to investigate a separate crime, such as possession of a controlled substance or driving under the influence of intoxicants.

■     A police officer is permitted

> "to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based on specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present." *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987).

Police officers are accorded some degree of latitude in taking safety precautions; therefore, our inquiry is limited to "whether the precautions taken were reasonable under the circumstances as they reasonably appeared at the time the decision was made." *Id*. at 524-25. Specifically, we consider whether the circumstances at the time Fineran asked defendant about his criminal history would support a reasonable suspicion that defendant posed an immediate threat of injury or harm.[4]

    The state argues that Fineran's safety concerns were "sufficiently supported by [Fineran's] observations, independent of the information that he received from defendant in response to his questions." Up until the point in the stop when Fineran asked defendant about his criminal history, Fineran had seen defendant moving around in the front area of the car and had concluded that he was exhibiting unusually nervous behavior. Also, a jacket was on the front passenger seat. The state contends that, based on those circumstances, Fineran was justified in asking defendant questions unrelated to the traffic stop in order to ascertain whether he posed a risk to safety.[5]

■     We do not agree with the state that those circumstances created a reasonable suspicion that defendant posed an immediate threat of serious physical injury. No weapons

---

[4] Fineran testified that he had finished investigating the traffic infraction when he first asked defendant if he had any previous arrests:

> "Q. After you'd obtained the information with respect to the vehicle and the reason for the stop, what happened next chronologically?

> "A. I asked * * * [defendant] if he'd ever been arrested before * * *."

[5] The state identifies defendant's careless driving as one of the factors causing Fineran's safety concerns; however, Fineran never testified that defendant's driving contributed to his safety concerns.

were visible and defendant did not make any movements towards the jacket in Fineran's presence, as if to retrieve a weapon for immediate use. *See State v. Blevins*, 142 Or App 237, 920 P2d 1131 (1996) (nervous behavior and refusal to comply with officer's request to keep hands visible justified pat down for officer safety); *State v. Smay*, 118 Or App 31, 845 P2d 1294 (1993) (frisk for officer safety reasons justified by fact that defendant appeared to be nervous and intoxicated, kept one hand behind his back and was whispering to companions); *State v. Starkweather*, 98 Or App 7, 777 P2d 418 (1989) (reasonable concern for safety arose where defendant exhibited nervous and erratic behavior, appeared to be concealing something from officers and covertly moved hand under jacket that was in passenger seat). Even if Fineran correctly suspected that defendant was under the influence of controlled substances, there was nothing in defendant's behavior to suggest imminent aggressiveness or hostility toward Fineran. *State v. Claxton*, 140 Or App 168, 915 P2d 421 (1996). In fact, the first sign of aggressiveness occurred *after* Fineran inquired about defendant's criminal history, when defendant became visibly agitated and threw his pager across the car. Fineran testified that defendant was cooperative and nonconfrontational in providing his license and answering questions about the ownership of the car.

Confining our review to the circumstances as they reasonably appeared to Fineran at the time he finished investigating the traffic infraction, we conclude that it was not reasonable for him to believe that defendant posed an imminent threat of serious physical injury. Because his safety concerns were not reasonable, Fineran had no authority to detain defendant after he had completed the investigation of the traffic infraction. The evidence obtained as a result of that unlawful detention should have been suppressed.

Reversed and remanded for a new trial.