Argued and submitted July 24, reversed and remanded for new trial
December 31, 1996

## STATE OF OREGON,
*Respondent,*

*v.*

## JEFFRY MATHIAS SENN,
*Appellant.*

(Q9501837M; CA A90169)

930 P2d 874

Andy Simrin, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Judith Brant, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Defendant appeals from a judgment of conviction for unlawful possession of a firearm, ORS 166.250, following a court trial on stipulated facts. He argues, *inter alia*, that the trial court erred in denying his motion to suppress evidence obtained at the time of his arrest. We reverse.

On March 26, 1995, Beaverton police officer Cumiford stopped a vehicle in which defendant was a passenger because the driver and defendant were not wearing seat belts. As Cumiford approached the car, he saw defendant move his upper torso towards the floor board. He then asked the driver and defendant for identification. The driver produced identification, and Cumiford cited her for driving without wearing a seat belt. When defendant told Cumiford that he had no identification with him, Cumiford asked defendant to get out of the car. Cumiford did so in order to ask defendant his name out of the earshot of the driver and another passenger, and then to confirm defendant's response with the car's other two occupants to determine if their answers were consistent.

As defendant was getting out of the car, Cumiford asked him if he had any weapons. Defendant replied that he had a gun in the waistband of his pants. Eventually, defendant also admitted that he did not have a permit for the gun. Defendant was arrested and charged with unlawful possession of a firearm. Before trial, defendant moved to suppress all of the evidence obtained during the traffic stop. The trial court denied that motion.

On appeal, defendant raises five assignments of error. The first does not merit discussion. The second through fourth assignments of error pertain to the state's decision to proceed with the charge against defendant as a misdemeanor instead of a violation. Defendant argues that the state did not "declare on the record" its intention to treat the offense as a misdemeanor, as required under ORS 161.565(2).[1] However,

---

[1] ORS 161.565(2) provides:

"Upon the date scheduled for the first appearance of the defendant upon any misdemeanor charge, other than a misdemeanor created under ORS 811.540 and 813.010, the district attorney first shall declare on the record the

defendant did not raise this issue below; nor are his alleged errors apparent on the face of the record. We may not address them for the first time on appeal. *State v. Lovette*, 145 Or App 317, 930 P2d 856 (1996); *State v. Jolley*, 145 Or App 312, 315-16, 930 P2d 855 (1996).

In his fifth assignment of error, defendant challenges the trial court's denial of his motion to suppress. In moving to suppress, defendant argued that, when Cumiford asked him to get out of the car and asked if he had any weapons, the officer exceeded the scope of his authority under ORS 810.410(3)(b). The state responded that Cumiford's request that defendant get out of the car was within the permissible scope of the traffic stop, because the purpose of that request was to ensure that the officer obtained defendant's true identity for purposes of issuing the traffic citation. As to Cumiford's inquiry regarding weapons, the state argued that the question was based on valid officer safety concerns and, thus, was not precluded by *State v. Dominguez-Martinez*, 321 Or 206, 895 P2d 306 (1995). The trial court agreed with the state, and specifically determined that the officer's "observation of defendant's movements gave [him] good cause to be concerned for his safety."

On appeal, defendant reiterates his argument that both Cumiford's request that he leave the car and the inquiry about weapons exceeded the permissible scope of a traffic stop. ORS 810.410(3)(b) provides:

"A police officer:

"* * * * *

"(b)   May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to

intention whether or not to treat the offense in the case as a violation. The case shall proceed as a violation unless the district attorney affirmatively states that the case shall proceed as a misdemeanor. If the case proceeds as a violation, the accusatory instrument shall be amended to denominate as a violation the offense in the case, and the offense, for purposes of the case, shall thereafter be treated as a violation subject to a fine as provided in ORS 161.635 for violations. If the district attorney declares an intention to treat the offense as a misdemeanor, the offense in the case shall thereafter continue to be treated as a crime. If the offense is denominated a violation pursuant to this subsection, the court shall, when it enters judgment in the case, clearly denominate the offense as a violation in the judgment."

the traffic infraction, identification and issuance of citation."

In *Dominguez-Martinez*, the court held:

"[U]nder ORS 810.410, * * * an officer who stops a person for a traffic infraction may investigate only that infraction, unless the state can point to some basis other than the traffic infraction to broaden the scope of the investigation." 321 Or at 212.

In *State v. Aguilar*, 139 Or App 175, 912 P2d 379, *rev den* 323 Or 265 (1996), we applied *Dominguez-Martinez* and held that, under ORS 810.410(3)(b), an officer could not broaden the scope of a traffic stop by asking the defendant if he had drugs, unless the officer had reasonable suspicion that the defendant was engaged in that illegal activity. *Id.* at 181. We explained that the officer's belief must be based on specific and articulable facts, and that the belief must be "reasonable under the totality of the circumstances existing at the time and place the peace officer acts." *Id.* at 182 (quoting *State v. Ehly*, 317 Or 66, 80, 854 P2d 421 (1993)).

Defendant contends that this case is directly analogous to *Aguilar* in that Cumiford lacked reasonable suspicion that defendant was engaged in illegal activity involving firearms. The state responds that *Dominguez-Martinez* and its progeny, including *Aguilar*, do not preclude reasonable officer safety-related inquiries where,

"during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present." *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987).

■ ■ There is no conflict or inconsistency between *Dominguez-Martinez* and *Bates*. An officer safety inquiry or frisk in the course of a traffic stop does not violate ORS 810.410(3)(b), so long as that inquiry or frisk is justified by reasonable suspicion as prescribed in *Bates*. *See, e.g., State v. Peterson*, 143 Or App 505, 923 P2d 1340 (1996). However, we conclude that, in the circumstances of this case, the officer's inquiry about weapons was not "based upon specific and articulable facts, that the citizen might pose an immediate

threat of serious physical injury." *Bates*, 304 Or at 524. Thus, that inquiry impermissibly broadened the traffic stop.

*Bates* frames our inquiry. In *Bates*, the defendant was stopped for a traffic infraction. The stop occurred at 4:40 a.m. in a "high crime residential area," and the defendant's car had out-of-state license plates. *Id.* at 521. In the back seat of the car, in plain view, were a television and a video cassette recorder. On the officer's request, the defendant produced a valid driver's license, and the defendant complied with the officer's directive to keep his hands in view. During the stop, the officer noticed a bag on the floor board between the defendant's feet and asked him to reach down and cautiously pull it out. The defendant refused to do so and, instead, "reached under the seat and remained in that position while [the officer] 'repeatedly asked him to take a hold of what I couldn't see, what I couldn't make out, and to pull it out in plain view so I could see it.' " *Id.* After about 10 seconds, the officer drew his service revolver from its holster and ordered the defendant out of the car. The officer then retrieved the bag, which contained live ammunition, drugs, and drug paraphernalia. The officer also found a loaded handgun under the front seat.

The defendant moved to suppress, arguing that the officer's request that he pull out the bag was unlawful. The state responded, and the trial court agreed, that the officer's actions were warranted, because the officer reasonably suspected that the defendant was armed and dangerous. The Supreme Court reversed:

> "[I]t is not our function to uncharitably second-guess an officer's judgment. A police officer in the field frequently must make life-or-death decisions in a matter of seconds. There may be little or no time in which to weigh the magnitude of a potential safety risk against the intrusiveness of protective measures. An officer must be allowed considerable latitude to take safety precautions in such situations. Our inquiry therefore is limited to whether the precautions taken were reasonable under the circumstances as they reasonably appeared at the time that the decision was made.

> "* * * * *

"Although the police are entitled to some leeway in taking protective measures, we must draw the line at some point. The facts articulated by [the officer] in this case fall short of creating a reasonable belief that this defendant posed an immediate threat. In light of defendant's cooperative attitude, his lack of aggressive or threatening behavior, and the absence of any apparent weapon, the mere possibility that he might have committed a crime and the presence of what appeared to be a bag are not sufficient. The officers violated defendant's constitutional rights when they instructed him to slide the bag into view." 304 Or at 524-25, 527.

We recently applied *Bates'* reasoning in *Peterson*, a case involving circumstances similar to those of this case. There, the officer approached the defendant's vehicle during a traffic stop and saw the defendant " 'moving around a great deal in the car,' " with the movement apparently "directed towards the passenger seat area." 143 Or App at 507. The defendant appeared nervous, with his eyes " 'darting around,' " and he became agitated because the pager he was wearing kept beeping. *Id*. The officer asked the defendant if there were any drugs or weapons in the car, and the defendant said no. When the officer asked the same question a second time, the defendant told the officer that he had a boot knife. During the ensuing patdown, the officer discovered drug paraphernalia as well as the knife. After arresting the defendant, the officer found a loaded revolver under a jacket on the front seat as well as a sawed off shotgun in the trunk.

The defendant moved to suppress, invoking *Dominguez-Martinez*, and the state responded that the officer's inquiries were justified by legitimate officer safety concerns. The trial court denied suppression, and we reversed:

"No weapons were visible and defendant did not make any movements towards the jacket in [the officer's] presence, as if to retrieve a weapon for immediate use. Even if [the officer] correctly suspected that defendant was under the influence of controlled substances, there was nothing in defendant's behavior to suggest imminent aggressiveness or hostility toward [the officer]. * * * [The officer] testified that defendant was cooperative and nonconfrontational in providing his license and answering questions about the ownership of the car." *Peterson*, 143 Or App at 510-11 (citations omitted).

In this area, as in many aspects of search and seizure law, fact matching can be a fool's errand. Nevertheless, the material facts in this case parallel those in *Peterson*. Indeed, the "specific and articulable facts" giving rise to an officer safety concern were substantially weaker than in either *Peterson* or *Bates*. Defendant's demeanor throughout the encounter with Cumiford was entirely cooperative, nonhostile, and nonthreatening. *Bates*, 304 Or at 527. Nothing in defendant's conduct justified a reasonable suspicion that he posed an immediate threat of serious physical injury to Cumiford. *Id.* at 524. *Accord Peterson*, 143 Or App at 511. Although Cumiford did see defendant's upper torso move forward as he approached the car, that movement was materially indistinguishable from the defendant's movements toward the passenger seat in *Peterson*. *See also State ex rel Juv. Dept. v. Finch*, 144 Or App 42, 50-51, 925 P2d 913 (1996) (describing officer safety cases involving "furtive movements").

■   Finally, even assuming, without deciding, that Cumiford's request that defendant step out of the car did not exceed the permissible scope of the traffic stop, defendant's compliance with that request could not, in the context of this case, give rise to a reasonable suspicion of imminent dangerousness sufficient to satisfy *Bates*. We fully appreciate that, as a practical matter, Cumiford felt more vulnerable with defendant out of the car, where he had more freedom of movement. But the same might well be said in many, perhaps most, instances where an officer asks a person to leave a vehicle. Here, defendant, who had been fully cooperative throughout the stop, left the car only because of Cumiford's request. Where, as here, defendant's conduct while he was in the car was insufficient to warrant officer safety-related inquiries, defendant's ready compliance with the officer's request could not transmute and elevate the same circumstances into "specific and articulable" facts sufficient to satisfy *Bates*.

In sum, the only "specific and articulable" facts Cumiford identified were the movement of defendant's torso and defendant's presence outside the car, by virtue of defendant's voluntary compliance with the officer's own request.

Those facts were insufficient to support a reasonable suspicion that defendant posed an imminent threat of serious physical injury. Accordingly, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded for new trial.