Argued and submitted June 25, reversed and remanded December 24, 1997

## STATE OF OREGON,
*Respondent,*

*v.*

## CHARLES WILLIAM MORTON,
*Appellant.*

(CF96-0092; CA A92843)

951 P2d 179

Irene B. Taylor, Deputy Public Defender, argued the cause for appellant. With her on the brief was Sally L. Avera, Public Defender.

Ann F. Kelley, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

Defendant appeals his conviction of possession of a controlled substance, ORS 475.992(4), arguing that the trial court erred in denying his motion to suppress evidence. We reverse.

On December 21, 1995, Officer Roberts, while on patrol in the city of Pendleton, saw the driver of the vehicle in which defendant was a passenger make illegal lane changes. He also saw that defendant was not wearing a seatbelt. Roberts stopped the vehicle and cited the driver for the traffic infractions. He noticed an odor of marijuana emanating from the vehicle but testified that, "I believe it was probably from the driver due to the things that I got off of him." After issuing the citation to the driver, Roberts moved to the passenger side of the vehicle and approached defendant, intending to cite him for failing to wear his safety belt, in violation of ORS 810.210. Roberts testified as to what transpired next:

> "When I addressed the passenger, Mr. Morton, I requested his I.D. He, at that time I noticed, was very despondent. He had his head back against the backrest of the car. His eyes appeared to be droopy, bloodshot. I asked a couple of times for the I.D. before he finally presented it to me.
>
> "Based on the observations I made, I began to inquire whether he had been drinking or possibly using some form of narcotics. He had indicated he was just tired. I'd asked him to step out of the car, at which time he did."

Roberts testified that his reason for asking defendant to get out of the car was to investigate the possibility that a drug crime had been committed. Roberts performed a horizontal gaze nystagmus test and checked defendant's pupils for dilation and constriction. Roberts then asked defendant whether he used controlled substances, to which defendant responded that he did for "recreational use." Next, Roberts told defendant that he intended to issue him a written warning for failing to wear his safety belt and that he could get back into the vehicle. As defendant did so, the vehicle tilted and a small brown glass vial rolled from beneath the passenger seat. Roberts shined his flashlight on the vial and

saw a white powdery substance. He then called for Officer Walker, who had since arrived at the scene, to stand with defendant while he retrieved the vial. Roberts sniffed the vial, concluded that it contained methamphetamine, and arrested defendant for possession of a controlled substance. ORS 475.992(4). Laboratory tests confirmed that the vial contained methamphetamine.

Before trial, defendant moved to suppress evidence of the drugs, arguing that Roberts lacked authority to ask him to step out of the vehicle.[1] Defendant contended that Roberts' request that he get out of the car exceeded the permissible scope of a stop for a traffic infraction under ORS 810.410(3)(b). The court denied the motion to suppress and, following a trial to the court, convicted defendant of possession of a controlled substance. On appeal, defendant assigns as error the trial court's denial of his motion to suppress.

On review of motions to suppress, we are bound by the trial court's findings of fact when there is sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). If the court did not make findings, and there is sufficient evidence in the record, we presume that the court made factual findings consistent with its legal conclusions. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). We review the trial court's legal conclusions for errors of law. *Ehly*, 317 Or 75; ORS 138.220.

Because defendant was stopped pursuant to ORS 811.210 for failing to wear his safety belt, ORS 810.410(3)(b) governs our analysis. *See State v. Dominguez-Martinez*, 321 Or 206, 210, 895 P2d 306 (1995). ORS 810.410 provides, in part:

"(3)  A police officer:

"* * * * *

"(b)  May stop and detain a person for a traffic infraction for the purpose of investigation reasonably related to the traffic infraction, identification and issuance of the citation."

---

[1] Defendant did not challenge the stop of the vehicle or the seizure of the drugs after they were in plain view.

There is no dispute that Roberts had not yet completed his investigation of the traffic violation. *See State v. Hadley*, 146 Or App 166, 172, 932 P2d 1194 (1997) (in virtually all instances a traffic stop continues until the motorist has had a "real time" opportunity to move on.) Rather, this case centers on whether or not he impermissibly exceeded the scope of that investigation when he asked defendant to get out of the car for the purpose of exploring whether he was under the influence of a controlled substance.[2] An officer may broaden the scope of the investigation of the traffic infraction if there is a reasonable suspicion that a defendant has committed illegal acts other than the traffic infraction. *State v. Aguilar*, 139 Or App 175, 181, 912 P2d 379, *rev den* 323 Or 265 (1996). A reasonable suspicion is defined as an objective test that requires an officer to point to specific, articulable facts giving rise to a reasonable inference that the defendant committed a crime. *Id.* at 182 (citing *Ehly*, 317 Or at 70). ORS 131.605; ORS 131.615. We consider the totality of the circumstances that existed at the time and place that the officer acted to determine whether the officer's suspicion was reasonable. *Id.*

Defendant contends that the officer did not have a reasonable suspicion that he was in possession of a controlled substance, making Roberts' request that defendant get out of the vehicle unlawful and requiring suppression of the drugs seized in plain view. Defendant argues that the state cannot articulate facts, aside from his appearance, from which a reasonable inference could be drawn about any criminal activity other than the traffic infraction.[3]

■ Relying on *State v. Lavender*, 93 Or App 361, 364, 762 P2d 1027 (1988), defendant maintains that evidence of drug intoxication cannot by itself justify a warrantless search and arrest for possession of a controlled substance. In that case, we concluded that the defendant's appearance and behavior, described as appearing intoxicated without an odor of alcohol, having dilated pupils and a flushed face, and being

---

[2] Because defendant does not argue that the point at which the investigation was expanded was when Roberts first questioned him about drug or alcohol use, we *do not address it*.

[3] It is significant that defendant was a passenger in the vehicle. Roberts testified that he knew it was not a crime for a passenger to be under the influence of alcohol or a controlled substance.

hyperactive, did not support *probable cause* that the defendant had committed the crime of possession of a controlled substance. While reasonable suspicion requires less certainty than probable cause, *State v. Wolfe*, 93 Or App 401, 405, 763 P2d 154 (1988), *rev den* 307 Or 303 (1989), under these facts, we hold that Roberts did not have reasonable suspicion to expand the traffic stop.

■■■■ An officer may not engage in inquiries unrelated to the bases of a traffic stop during a traffic stop without some independent source of reasonable suspicion. *Hadley*, 146 Or App at 171. In this case, the state failed to articulate facts that gave rise to a reasonable suspicion of illegal activity. The only facts known to Roberts at the time he expanded the search were: there was a smell of marijuana in the vehicle, which Roberts associated with the driver; defendant appeared "very despondent" and had "droopy, bloodshot" eyes; Roberts had to ask several times before defendant produced identification. The question is whether these facts give rise to a reasonable inference that defendant had committed a crime. We hold that they do not.[4]

■■■■ The state argues, in the alternative, that Roberts was justified in asking defendant to leave the vehicle because he was concerned for his own safety. Neither Roberts' testimony nor precedent supports that argument.

First, as stated, Roberts testified that his request that defendant leave the vehicle was to investigate the possibility of a drug crime, not out of safety concerns. Second, *State v. Peterson*, 143 Or App 505, 923 P2d 1340 (1996), refutes the state's argument. In *Peterson*, the defendant was stopped for a traffic infraction. While approaching the vehicle, the officer observed the defendant "moving around a great deal" and noticed that the movements were directed toward the passenger side of the vehicle. *Id.* at 507. While answering questions about the traffic stop, the defendant

---

[4] Had defendant been the driver of the car, these facts might give rise to a reasonable inference that he was driving under the influence of marijuana. ORS 813.010. As the passenger, however, even if the evidence could give rise to a reasonable suspicion that he was under the influence of marijuana, it is not a crime to possess less than an ounce of marijuana; it is only a violation. ORS 475.992(4)(f). Accordingly, these facts do not give rise to a reasonable inference that defendant had committed a *crime*.

seemed nervous and stuttered and his eyes "darted around." *Id.* At hearing, the officer testified that he suspected that the defendant was under the influence of controlled substances. *Id.* at 509 n 3.

We noted that police officers are accorded some latitude in taking safety precautions and that our inquiry was limited to "whether the precautions taken were reasonable under the circumstances as they reasonably appeared at the time the decision was made." *Id.* at 510 (quoting *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987)). We found it significant that defendant made no hostile movements while in the presence of the officer and "[e]ven if [the officer] correctly suspected that defendant was under the influence of controlled substances, there was nothing in defendant's behavior to suggest imminent aggressiveness or hostility toward [the officer]." *Id.* We held the officer's safety concerns were not reasonable. We reach the same conclusion in this case.

Reversed and remanded.