Argued and submitted December 30, 2008, reversed and remanded
August 12, 2009

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JIM MARVIN AMELL,
*Defendant-Appellant.*

Lane County Circuit Court
200620740; A135199

215 P3d 910

Carolyn Bys, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Legal Services Division, Office of Public Defense Services.

Matthew J. Lysne, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams. Solicitor General.

Before Sercombe, Presiding Judge, and Brewer, Chief Judge, and Deits, Senior Judge.

SERCOMBE, P. J.

## SERCOMBE, P. J.

Defendant appeals from a judgment of conviction for unlawful possession of cocaine and carrying a concealed weapon. ORS 475.884; ORS 166.240. Defendant assigns error to the denial of his motion to suppress evidence. That evidence was seized following a patdown search of defendant for weapons during a traffic stop. We conclude that the search was not justified as necessary to protect the safety of police officers and that the evidence should have been suppressed. Accordingly, we reverse and remand.

■ We state the facts consistently with the trial court's explicit and implicit findings. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993); *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). We review the court's legal conclusions for errors of law. *Ehly*, 317 Or at 75.

Early one morning, at approximately 1:00 a.m., Eugene Police Officer Williams observed defendant driving in excess of the speed limit in downtown Eugene. Williams stopped defendant's car and engaged in what he described as a "fairly routine nighttime traffic stop." Williams asked defendant what he was doing. Defendant was "cordial and friendly" and responded that the car belonged to his brother and that his California driver's license was in a wallet that he had left at a bar earlier. Dispatch advised Williams that defendant's Oregon driver's license was suspended.

While Williams was standing at the back of his patrol car writing the citations, Officer Mills arrived to provide backup. Mills positioned himself "towards the passenger side, front driver's door of Williams' car, just keeping an eye." Mills "noticed that [defendant] was reaching in between the driver's seat and the middle console, and it looked like he was digging in that area." Mills could see defendant "reaching down, to the point where the car was moving." Mills told Williams, who was occupied with writing the citations, about defendant's conduct. Williams later testified:

> "I don't know if I felt threatened at that point, but it definitely raised a red flag as to officer safety. He had been— he'd been cordial and polite prior to that, so there wasn't an immediate red flag to me at that point, or prior to that. And

so the movement was definitively the concern. But whether—whether I felt like I was in an immediate risk being that he was still in the vehicle at that point, I don't think so."

Williams finished writing the citations a few minutes later and began a conversation with defendant. Before giving defendant the citations, Williams "told him that [Williams] was somewhat suspicious as to what [defendant] was doing, what was going on in the car." Defendant responded that "there wasn't anything wrong." Then, Williams asked if he could "check the vehicle for anything illegal," and defendant consented to that search. Williams either asked or instructed defendant to leave the vehicle. After defendant emerged from the car, Williams performed a patdown search.[1] The patdown search of defendant uncovered a pocketknife in his back pocket (a "four inch blade butterfly knife") and a baggie containing a white powdery substance. Defendant was arrested and charged with carrying a concealed weapon and unlawful possession of cocaine.

In a pretrial motion, defendant moved to suppress all evidence obtained during the encounter, arguing that the evidence was the product of an unlawful search in violation of his rights under Article I, section 9, of the Oregon Constitution.[2] The trial court denied the motion, and defendant was convicted of both charges. This appeal followed.

■ On appeal, defendant assigns error to the denial of his motion to suppress evidence. Defendant contends that the patdown search was unlawful because Williams lacked reasonable suspicion that defendant posed an immediate threat to officer safety.[3] Any evidence obtained as a result of the illegality, defendant argues, must be suppressed. The

---

[1] Williams testified that, "[u]pon him giving me consent, I asked him if he would step out of the vehicle. And I don't recall if I asked or told him, but I wound up performing a pat down search of his person for weapons."

[2] Article I, section 9, provides, in part, "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure."

[3] Defendant also argues that he was unlawfully seized when the officer requested consent to search his vehicle because the request impermissibly extended the traffic stop. Because we find defendant's first argument to be dispositive, we do not address his alternative argument.

state responds that, under the totality of the circumstances, including defendant's "dramatic digging movements" in the vehicle, Williams reasonably believed that defendant might pose an immediate threat of physical injury so that the request for consent to search and the ensuing patdown were lawful. We conclude that defendant's movements in the vehicle, in the context of this case, did not provoke a reasonable suspicion of a present threat to officer safety. We therefore reject the state's argument that the patdown search was justified in the absence of a search warrant because the officers were entitled to take reasonable precautions to neutralize any threat to their safety.

We hesitate to second-guess the perception of threat by an experienced police officer. As noted in *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987), a "police officer in the field frequently must make life-or-death decisions in a matter of seconds. There may be little or no time in which to weigh the magnitude of a potential safety risk against the intrusiveness of protective measures." Thus, police officers are entitled to "considerable latitude" in taking measures to protect their safety. *Id.* Nonetheless, when those measures intrude on the privacy interests protected by Article I, section 9, we review the sufficiency of the asserted officer safety rationale under the standards set out in *Bates*. Article I, section 9, is not offended by an officer who

> "take[s] reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present."

*Id.* at 524. We limit our inquiry to "whether the precautions taken were reasonable under the circumstances as they reasonably appeared at the time that the decision was made." *Id.* at 525.

The trial court held that defendant's movement justified removing defendant from the car and subsequently patting down defendant while the car was searched:

> "I think that when the defendant was observed moving around in a way that might have suggested either that he

was hiding something or that there may have been a weapon present, that gave the officer the basis to ask for consent. I don't think he would have had that otherwise, given the basis for the stop. But I think once that movement occurred, there's valid reason for the officer to ask for consent to search the vehicle.

"The defendant did consent to that. And there was a valid officer safety concern at that point to remove the defendant from the vehicle and pat him down while the search was— of the vehicle was being conducted."

We accept the court's factual findings. But we disagree that those findings establish that Williams's suspicion of a threat to his safety was objectively reasonable under the totality of the circumstances known to him at that time.

When Williams asked about defendant's movements, the traffic stop was nearly completed; all that remained was to hand defendant the citations. The "specific and articulable facts" known to Williams at that time were as follows: (1) defendant had been cordial and friendly; (2) he had lied about his suspended Oregon driver's license; (3) he had been observed making a digging movement in the front of the vehicle out of the presence of the officers; and (4) he got out of the vehicle in compliance with the officer's request. Williams testified that he did not feel that there was "an immediate risk" of harm while defendant remained in the car. The state relies primarily on defendant's digging movements to suggest the officer's actions were reasonable precautions based on officer safety concerns.

■  We recognize that, in this area of search and seizure law, fact matching has its limitations. Whether a gesture or movement will give rise to a reasonable suspicion that a citizen poses an immediate threat of serious physical injury depends on the individual circumstances of each case. *State v. Hannaford*, 178 Or App 451, 458, 37 P3d 200 (2001).

Nevertheless, the cases relied on by the state involve situations where the defendant made "furtive" movements during the interaction with the officers, often after being advised not to do so, or where the defendant made motions consistent with hiding or retrieving something. For example, in *State v. Blevins*, 142 Or App 237, 239, 920 P2d 1131 (1996),

the officer noticed that the defendant was "nervous" and "fidgeting" and "[he was] reaching into [his] pockets, between the seats, between their legs and under the seats." The officer was concerned, and the furtive movements continued despite the officer repeatedly instructing the defendant to keep his hands visible. *Id.*

In *Hannaford*, we upheld a warrantless search of the defendant's vehicle based on officer safety and explained:

> "When [defendant] was asked to find evidence of insurance, he completely turned his back to the officer in an unusual way and concealed his hands from view. He began to thrust something further and further underneath the seat to the extent that a box became visible on the floor in the backseat. The box was large enough to contain a gun. All of those actions occurred in response to a question about insurance papers. When the officer told defendant of his concern about defendant's actions, defendant immediately produced the requested documentation from a different area under the seat from where his hands had been concealed. Based on those facts, the officer undertook a search for his own safety."

178 Or App at 461.

Similarly, in *State v. Haney*, 158 Or App 53, 973 P2d 359 (1999), we affirmed the denial of a motion to suppress evidence where the police officer requested to search the defendant's purse based on officer safety grounds. In *Haney*, reasonable suspicion of a threat to officer safety was predicated on the fact that "the other two passengers repeatedly reached under the bench seat, making furtive movements that, in [the officer's] experience, indicated that weapons were possibly underneath the seat," *id.* at 56, together with the facts that there "were three suspects and three officers, it was night time, and two of the passengers in the truck had been reluctant to follow the officers' instructions." *Id.* The concern for officer safety in all of those cases rested on a suspicious movement, together with other conduct that provoked alarm (disobedience of police instruction, conduct inconsistent with inquiry, reluctance to follow police instructions).

Defendant relies primarily on *State v. Senn,* 145 Or App 538, 930 P3d 874 (1996), and *State v. Peterson*, 143 Or App 505, 923 P2d 1340 (1996), *rev den*, 327 Or 521 (1998), as cases where a possible threat shown by a defendant's movement was insufficiently corroborated by other circumstances. In *Senn*, the defendant argued that the officer's inquiry about weapons during a traffic stop was not justified by officer safety concerns. In that case, during the course of an investigation for failing to wear a seat belt, the defendant passenger was asked to get out of the car and whether he had any weapons. The defendant replied that he had a gun in the waistband of his pants. 145 Or App at 540. The defendant sought to suppress evidence of the seized weapon. The specific and articulable facts identified by the officer in *Senn* were the forward movement of the defendant's upper torso in the vehicle prior to the stop, and the defendant's emergence from the vehicle.

We held that those facts were insufficient to support a reasonable suspicion that the defendant posed an imminent threat of serious physical injury. The movement within the vehicle was innocuous by itself. That movement, combined with the defendant's compliance with the request to leave the vehicle, was insufficient to constitute reasonable suspicion of a threat:

> "[D]efendant's compliance with [the officer's request to leave the vehicle] could not, in the context of this case, give rise to a reasonable suspicion of imminent dangerousness sufficient to satisfy *Bates*. We fully appreciate that, as a practical matter, [the police officer] felt more vulnerable with defendant out of the car, where he had more freedom of movement. But the same might well be said in many, perhaps most, instances where an officer asks a person to leave a vehicle. Here, defendant, who had been fully cooperative throughout the stop, left the car only because of [the police officer's] request. Where, as here, defendant's conduct while he was in the car was insufficient to warrant officer safety-related inquiries, defendant's ready compliance with the officer's request could not transmute and elevate the same circumstances into 'specific and articulable' facts sufficient to satisfy *Bates*."

*Senn*, 145 Or App at 545.

In *Peterson*, an officer approached the defendant's vehicle during a traffic stop and saw the defendant "moving around a great deal in the car" with movements "directed toward the passenger seat area" where there was a jacket on the seat. 143 Or App at 507. The defendant appeared nervous, his eyes were "darting around," and he became agitated after the pager he was wearing repeatedly beeped. *Id.* The officer asked the defendant if there were any drugs or weapons in the car, and the defendant said no. When the officer asked the same question a second time the defendant replied that he had a boot knife. The defendant was asked to leave the vehicle and was then subjected to a patdown search that revealed drugs and a concealed weapon. The defendant was arrested, and the officer found a loaded revolver under a jacket on the front seat as well as a sawed-off shotgun in the trunk.

On appeal, the defendant challenged the denial of his motion to suppress, and the state responded that the officer's inquiries were justified by officer safety concerns. We reversed, holding that

> "[n]o weapons were visible and defendant did not make any movements towards the jacket in [the officer's] presence, as if to retrieve a weapon for immediate use. Even if [the officer] correctly suspected that defendant was under the influence of controlled substances, there was nothing in defendant's behavior to suggest imminent aggressiveness or hostility toward [the officer]. * * * [The officer] testified that defendant was cooperative and nonconfrontational in providing his license and answering questions about the ownership of the car."

*Id.* at 510-11 (citations omitted).

The legal analysis in this case is similar to that in the above cases; the state relies on defendant's physical movement in the vehicle and compliance with a police request to leave the vehicle as indicative of his dangerousness. The same result—suppression of the evidence seized in the patdown search—obtains. The state attempts to distinguish *Senn* and *Peterson* on the grounds that here defendant's movements "were consistent with him retrieving or

hiding a weapon" especially in light of this officer's experience.

The officer's experience that similar movements have led to the discovery of "weapons, drugs, [and] things of that nature" is relevant to establish the subjective belief of the officer. But the officer's experience is insufficient by itself to corroborate the objective reasonableness of his suspicion. There simply were no specific facts that suggest when defendant was digging "dramatically" between the seat and center console of the car that he posed an immediate threat of significant physical injury. There were no facts to characterize that conduct as hostile. The conduct was not directed at the police officers or done in their immediate presence. There was a break in time between the conduct and the reengagement of defendant in dialogue with the police officers. Defendant responded to Williams's question about what he was doing in a nonhostile manner and remained cordial and polite. Defendant's compliance with the request to leave the car provides no indication of belligerence. In short, defendant was cooperative at all times, did not show hostility, and made no suspicious movements during his interaction with the police officers. It is not necessarily threatening to dig between the seats of a vehicle, and, without more, the facts in this case do not amount to reasonable suspicion of a threat to officer safety. The trial court erred in denying defendant's motion to suppress evidence obtained as a result of the warrantless search of his person.

Reversed and remanded.