Argued and submitted September 29, 1997, reversed and remanded
November 25, 1998

## STATE OF OREGON,
*Respondent,*

*v.*

## WALTER L. DYER,
*Appellant.*

## (95C-22926; CA A94957)

970 P2d 249

Eric Johansen, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Kaye E. Sunderland, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendant appeals his convictions for possession of a firearm in a public building, ORS 166.370, possession of a controlled substance, ORS 475.992, and unlawful possession of a firearm, ORS 166.250. He assigns error to the trial court's denial of his motion to suppress. We are bound by the trial court's findings of historical fact if they are supported by the record. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We review the court's legal conclusions for errors of law, *id.*, and reverse.

On November 13, 1995, Deputy Sheriff Johnson was on a bicycle patrol near Stevens Middle School when he saw a small blue Dodge car spin its tires and rapidly accelerate as it came away from a stop sign. The car veered into the school driveway and parked. Defendant got out of the car and walked over to a pay phone that was located at the front of the school. Having decided to give defendant a citation for careless driving, Johnson began to walk toward defendant. Defendant noticed Johnson, hung up the phone and approached him. Defendant asked Johnson whether he was going to get a ticket. In reply, Johnson asked defendant whether he deserved one. Defendant smiled and said that he probably did. He produced his license and Johnson asked to see the car's registration and defendant's proof of insurance. They returned to the car and defendant retrieved those documents.

As defendant was leaning into the car to retrieve those documents, Johnson noticed that defendant had a large folding knife in a sheath on his belt. That, along with defendant's "outlaw biker style dress," heightened Johnson's safety concerns.[1] Johnson conducted a standard license and registration check. In response, the radio dispatcher gave Johnson a "Code 8" warning. Johnson testified:

"Code 8 is simply an abbreviated term they use to advise the officer that they have confidential information that we

---

[1] In response to the prosecutor's request to describe defendant's appearance, Johnson testified, "I believe he had on jeans. I remember like a leather motorcycle type vest and a ponytail. My initial impression, if you will, was like outlaw biker style dress."

do not want to let the person near us hear. It's like a warning to us that there's some type of stuff that may provoke an assault if the person hears it. Typically, a Code 8 would be warrant information, this person has a warrant, or some safety type information to let—you know, concealed handgun permit might be a Code 8. Any number of things."

In response to the Code 8 warning, Johnson asked defendant to sit on the curb in order to prevent defendant from fleeing the scene easily and to "limit the subject's mobility or ability to launch an attack." Defendant complied with Johnson's request. Johnson walked away from defendant to receive the balance of the dispatcher's message. He learned that defendant had been convicted for unlawful possession of a weapon in a public building. That information further heightened Johnson's safety concerns, particularly because he had seen defendant's knife and they were, presently, on public school premises.

Johnson returned to defendant to issue a citation for careless driving and release him. Generally, when he issues a citation, Johnson prefers that the person receiving the citation be seated in his or her own car, because Johnson believes that it is safer. Therefore, Johnson decided that he would ask defendant to return to his car while he issued the citation.

Before allowing defendant to return to his car, however, Johnson decided that it was necessary to perform a cursory search of the area that might be readily accessible to defendant in the car, to assure that defendant had no unknown weapons within his reach. Johnson asked defendant if he had any weapons in the car. Defendant said that he did not. Then Johnson asked if he could look in the car. Defendant said that he could not. Johnson told defendant that he was going to look in the car anyway. Johnson testified:

"At that point, [defendant's] cooperative and cheerful demeanor suddenly stopped. He became somewhat agitated and said that, you know, there was no way I was going to get into his car and look. And I said, well, I'm afraid I am. I need to check for my safety, and told him to sit down on the curb."

Defendant again protested the search and Johnson testified that he told defendant "to remain seated." Johnson opened the front driver's side door and quickly scanned the front seat area. He did not see any weapons. He then slid his hand under the driver's seat and discovered a .45 automatic handgun.

At that point, Johnson took defendant into custody and called for backup. Rather than impounding defendant's car, Johnson allowed a friend of defendant's to pick it up. Before he released the car, however, Johnson retrieved a jacket from the front seat. He conducted a pat down of the jacket and felt a hard cylindrical object that he thought could be a silencer for the handgun. He removed the object, which appeared to be a duck call. Johnson twisted it apart and discovered that it contained a substance that appeared to be, and was, methamphetamine. At the jail, an officer searched defendant and discovered an aluminum cigarette case in his pocket. The officer removed the cigarettes from the case and discovered a bindle of what appeared to be, and was, methamphetamine.

Defendant was charged with possession of a firearm in a public building, ORS 166.370, possession of a Schedule II controlled substance, ORS 475.992, and unlawful possession of a firearm, ORS 166.250.[2] He filed a motion to suppress the evidence of the handgun and the methamphetamine discovered as a result of the officer's search of the vehicle and the jacket. Making several rulings, the trial court denied defendant's motion to suppress. First, it concluded that Johnson's search of defendant's vehicle was justified under the officer-safety exception to the warrant requirement. It stated that defendant was properly stopped for a traffic infraction and that, during that stop, Johnson "reasonably feared for his safety," because he saw that defendant had a weapon and he knew that defendant had been arrested for unlawful possession of a weapon in the past. Under those circumstances, it concluded that Johnson's "limited search of the car" before asking defendant to return to it was reasonable. Second, it concluded that Johnson discovered the methamphetamine in

[2] An additional charge of being a felon in possession of a firearm, ORS 166.270, was dismissed.

defendant's jacket during a lawful search incident to arrest. Finally, it concluded that the officer discovered the methamphetamine in the cigarette case during a lawful inventory at the jail. Following a trial, defendant was convicted.

On appeal, defendant assigns error to the denial of his motion to suppress. He contends that the trial court erred when it concluded that Johnson reasonably feared for his safety before he searched defendant's car. As a result, defendant argues, Johnson's actions unlawfully expanded the scope of the traffic stop under ORS 810.410 and cannot be justified under the officer-safety exception to the warrant requirement, which is outlined in *State v. Bates*, 304 Or 519, 525, 747 P2d 991 (1987). Defendant did not argue at the suppression hearing that Johnson's actions violated ORS 810.410, and we decline to consider defendant's argument for the first time on appeal. *See* ORAP 5.45(2).[3]

■■  We turn to the trial court's ruling that Johnson's search was justified by the officer-safety exception to the Article I, section 9, warrant requirement. The officer-safety exception to that requirement provides that an officer is permitted

"to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, *the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present*."

*Bates*, 304 Or at 525 (emphasis added). Under the officer-safety exception, when an officer reasonably believes that "a lawfully stopped individual is dangerous and may gain immediate control of a weapon, he may conduct a search *of the area around the individual from which the individual could obtain a weapon*." *Ehly*, 317 Or at 83 n 16 (emphasis in original; quoting Rudstein, Erlinder and Thomas, 1 *Criminal Constitutional Law* § 2.07[7] (1992)).

---

[3] ORAP 5.45(2) provides:

"No matter assigned as error will be considered on appeal unlesss it was preserved in the lower court and assigned as error in the party's opening brief; provided that the appellate court may consider errors of law apparent on the face of the record."

■    According to Johnson's testimony, when Johnson and defendant met on the sidewalk, defendant agreed that he probably deserved a ticket. He turned over his license, his car's registration and his proof of insurance without incident. When Johnson asked defendant to sit on the curb, defendant readily complied. Other than the fact that defendant carried a knife and had a prior conviction for weapons possession, there is no evidence in the record that, while seated on the curb, defendant posed any threat to Johnson.[4] Defendant had been cooperative and had not, on this record, said or done anything that could be interpreted as creating an immediate threat of serious physical harm. Thus, under *Bates,* Johnson had no basis on which to invoke the officer-safety exception to justify any search.

■    It was while defendant was seated on the curb, however, that Johnson decided that he wanted to search defendant's car. His rationale for the search was that he wanted to put defendant in the vehicle in order to lessen defendant's mobility, making defendant less a threat to him, but that he first needed to ensure that there were no weapons in the car. There is nothing in this record to indicate that defendant posed so great a safety risk while seated on the curb as to require Johnson to move him to another location. Hence, any safety risk created by moving defendant to the car was created by Johnson and not by defendant. An action taken by an officer as a safety precaution in the field cannot serve to create a threat that justifies a search for officer safety. *See State v. Senn,* 145 Or App 538, 545-46, 930 P2d 874 (1996) (when otherwise cooperative defendant got out of car at officer's request, officer could not use fact that defendant had more freedom of movement outside the car as basis for officer-safety search).

We conclude that Johnson's search cannot be justified under the officer-safety exception. While Johnson had some generalized safety concerns because of his mode of transportation, the location of the stop and his suspicion that

---

[4] *But see State v. Pope,* 150 Or App 457, 462-63, 946 P2d 1157 (1997) ("An officer's discovery of one weapon may 'reasonably increase, rather than lessen, the officer's suspicion that the party is holding additional weapons.'" (quoting *State v. Redmond,* 114 Or App 197, 201, 834 P2d 516 (1992)).

defendant's car might contain a weapon, his description of defendant's behavior during the encounter indicates that he had no specific safety concerns based on defendant's behavior.[5] Indeed, Johnson testified that defendant had been cooperative and cheerful until Johnson informed defendant that he was going to search defendant's car despite defendant's refusal to consent. Even at that point, Johnson testified that defendant verbally protested the search but did not make any aggressive or threatening movements towards Johnson. In short, there was no evidence that, at any point during the stop, defendant posed an immediate threat of serious physical harm to anyone. Johnson and defendant were engaged in a routine traffic stop when Johnson decided to conduct the search. The officer-safety exception cannot justify Johnson's search of the car under those circumstances.

The trial court did not conclude, and the state does not argue on appeal, that any other exception to the warrant requirement justified Johnson's search of defendant's car. Because Johnson did not have a reasonable suspicion that defendant posed an immediate threat of harm when Johnson conducted that search, we conclude that that search violated Article I, section 9. That search lead to the discovery of the weapon and to the searches in which the officers discovered the methamphetamine. Therefore, the trial court erred in denying defendant's motion to suppress the evidence.

Reversed and remanded.

---

[5] The state identifies defendant's careless driving and his decision to hang up the phone and walk towards Johnson as factors causing Johnson to be concerned about his safety. Johnson did not, however, identify those as factors that contributed to his safety concerns. Johnson did identify defendant's "outlaw biker" appearance as a factor contributing to his safety concerns. In reaching its conclusion, the trial court refused to consider defendant's appearance, and the state does not challenge that decision. We note that, even if we considered Johnson's assessment of defendant's appearance to be relevant, it would not, alone, be sufficient to create a reasonable suspicion that defendant posed an immediate threat of physical harm. *See Bates*, 304 Or at 525; *Redmond*, 114 Or App at 201.