Argued and submitted September 24, 2015, reversed and remanded
February 3, 2016

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## OLAJAWON LEE THOMAS,
*Defendant-Appellant.*

Umatilla County Circuit Court
CF130284; A155662

367 P3d 537

David L. Sherbo-Huggins, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jonathan N. Schildt, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Pamela J. Walsh, Assistant Attorney General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

LAGESEN, J.

**LAGESEN, J.**

Defendant conditionally pleaded guilty to two counts of unlawful possession of a firearm, in violation of ORS 166.272 (Count 1) and ORS 166.250 (Count 2), reserving the right to appeal the trial court's denial of his motion to suppress the evidence of the short-barreled shotgun that he possessed. On appeal, defendant assigns error to the trial court's denial of his motion to suppress. He argues that the trial court erred when it determined that the warrantless patdown of defendant that led to the discovery of the gun was justified by the "officer-safety" exception to the warrant requirement of Article I, section 9, of the Oregon Constitution. We review to determine whether the trial court's factual findings are supported by constitutionally sufficient evidence in the record and whether the trial court correctly applied the applicable principles of law, *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993), and reverse and remand.

The pertinent facts are few and undisputed. The search at issue—a patdown—occurred in the context of a jaywalking stop. Officer Gutierrez, a traffic enforcement officer with the City of Hermiston Police Department, was on patrol the morning of April 27, 2013. Around 11:00 a.m., Gutierrez, who was in uniform and on his motorcycle, observed two men, defendant and Munoz, cross a five-lane street outside of a crosswalk. Gutierrez pursued them and cut them off as they were walking behind a tire store. The tire store was near—about 50 yards away from—the Sunset Motel, a place where Gutierrez personally had recovered drugs and weapons on earlier occasions. As Gutierrez was getting off his motorcycle and taking off his helmet, defendant and Munoz walked toward him, talking to each other. Defendant was wearing baggy clothes and carrying a backpack. Gutierrez knew Munoz from previous encounters, but did not know defendant.

Gutierrez advised Munoz and defendant that he was stopping them for jaywalking. Because Gutierrez did not know defendant, he asked defendant for identification. Defendant responded that he did not have any identification. Throughout the encounter, Munoz was "very calm and

collect[ed]" and "friendly." Defendant, in contrast, appeared to feel a "little bit uncomfortable" and a "little agitated." At one point, Munoz told defendant to calm down. Defendant would not make eye contact with Gutierrez but, instead, would look at Munoz or towards, but not at, Gutierrez. Gutierrez believed that, by making eye contact with each other, Munoz and defendant were communicating basically without using words. He "wasn't sure at the time what they were [] plotting." He became nervous and uncomfortable because he felt like defendant "was waiting for a sign from" Munoz. He thought that something was going to happen to him "because they were both still standing there, they were both either looking at me or towards my direction," and he became concerned that defendant "was either going to run [or] attack me." From Gutierrez's perspective, the contact felt unusual and "not normal" because he had not previously experienced a similar situation during a prior stop, although he had been a police officer for nine years and conducted more than 1,000 stops a year.

Based on those concerns, Gutierrez decided to conduct a patdown search of defendant. He directed defendant to get on his knees and put his hands behind his back, and defendant complied, although defendant initially pulled his hands away from Gutierrez when Gutierrez grabbed his fingers. Once Gutierrez secured defendant's hands, he patted him down. During that patdown, Gutierrez felt the handle of what he believed to be a shotgun in defendant's waistband. Gutierrez became scared and pushed defendant away. Defendant got up and ran away. After back up officers arrived, defendant was apprehended and charged in this case.

As noted, defendant moved to suppress evidence of the gun on the ground that the warrantless patdown, which uncovered the gun, violated defendant's rights under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. The trial court disagreed, ruling that the warrantless search was justified under the "officer safety" exception to the warrant requirement imposed by those constitutional provisions. The court concluded that "the officer's actions were properly based under the totality of the circumstances." Defendant challenges that ruling on appeal.

The "officer-safety" exception to the warrant requirement of Article I, section 9, permits a police officer to conduct a warrantless patdown search of a suspect during a traffic stop if the officer has "a reasonable suspicion, based on particularized facts, that [the] defendant might pose an immediate threat of serious physical injury" either to the officer or others present. *State v. Redmond*, 114 Or App 197, 201, 834 P2d 516 (1992) (citing *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987)); *see also State v. Rodriguez-Perez*, 262 Or App 206, 212, 325 P3d 39 (2014). On a motion to suppress, the state bears the burden of proving that the officer-safety exception applies. *Rodriguez-Perez*, 262 Or App at 212. "Satisfying that burden requires the state to establish not only that the officer subjectively believed that the defendant posed a threat, but also that the officer's belief was objectively reasonable." *Id.* at 213. To be objectively reasonable, a belief that a defendant poses a threat "must be based on facts specific to the particular person searched, not on intuition or a generalized fear that the person may pose a threat to the officer's safety." *State v. Jackson*, 190 Or App 194, 198, 78 P3d 584 (2003), *rev den*, 337 Or 182 (2004). The mere fact that a person behaves in a way that seems "strange" or "not normal" to an investigating officer is insufficient to justify a suspicion that the person might present a danger. *See State v. Weber*, 64 Or App 459, 463, 668 P2d 475 (1983) (concluding that a patdown search was not authorized under "officer-safety" exception to the Fourth Amendment warrant requirement based on facts that suspect did not make eye contact with the officer and acted in a way that was abnormal "f[e]ll far short of the articulation of specific facts necessary to justify a suspicion that a person is armed and dangerous").

*Bates* tells us that our task on review of the trial court's determination that the patdown was authorized by the officer-safety exception to the warrant requirement is to consider individually the specific facts that the state proved were known to Gutierrez at the time of the patdown, and to determine whether "any of the circumstances confronted by the officer either individually or collectively justify a reasonable suspicion that the defendant posed an immediate threat to" Gutierrez or others. 304 Or at 525. Here, the state

proved that the following facts were known to Gutierrez at the time he ordered defendant to his knees to conduct the patdown search: (1) that the encounter felt "not normal" to Gutierrez; (2) that defendant had jaywalked; (3) that defendant wore baggy clothes and carried a backpack; (4) that defendant seemed a "little" uncomfortable and agitated; (5) that defendant did not make eye contact with Gutierrez; (6) that defendant kept making eye contact with Munoz; (7) that defendant and Munoz "stood there" looking at, or toward, Gutierrez; and (8) that the location where Gutierrez stopped defendant was near a motel where Gutierrez, in the past, had recovered drugs and weapons. We turn to our task of considering those facts individually and then collectively, concluding ultimately that those facts, alone or taken together, do not give rise to an objectively reasonable belief that defendant might pose an immediate threat of serious physical injury to Gutierrez, or others, so as to justify a protective patdown search.

We have noted already that an officer's feeling that an encounter is "not normal" is insufficient to establish an objectively reasonable belief that a suspect may pose an immediate danger. *See Weber*, 64 Or App at 463. Defendant's act of crossing the street outside the crosswalk did not suggest that defendant was a violent person or otherwise might pose a threat. That defendant was wearing baggy clothes and a backpack also does not support a reasonable inference that defendant might pose a threat. *See State v. Miglavs*, 337 Or 1, 13, 90 P3d 607 (2004) ("[N]othing about [defendant's baggy clothes] alone could tell the officers anything about defendant, except that he liked to wear baggy clothing."). Neither does the fact that defendant was a "little" agitated and uncomfortable about interacting with a police officer. *See Rodriguez-Perez*, 262 Or App at 215 (concluding that the fact that defendant became "very agitated" during jaywalking stop did not support reasonable belief that defendant might pose an immediate danger, where defendant did not make aggressive or threatening movements or statements). The same goes for defendant's lack of eye contact with Gutierrez. *See Weber*, 64 Or App at 463.

As for defendant's eye contact with Munoz, that fact, standing alone, does not suggest that either defendant or

Munoz might be dangerous. Although Gutierrez subjectively believed that the two were engaging in nonverbal communication to plot against him by making eye contact with each other, the record contains no facts that would permit the conclusion that that belief was an objectively reasonable one, and not just a product of the generalized fear that Gutierrez was experiencing because the stop felt different to him than his previous stops. For example, the state did not introduce evidence that the suspects' eye contact was accompanied by gestures, facial expressions, or other objective indicators that the two were, in fact, communicating. Moreover, the evidence about Munoz indicates that Gutierrez was familiar with him, and that Munoz was cooperative and friendly toward Gutierrez, which tends to undercut the objective reasonableness of any belief that Munoz presented a risk to Gutierrez, or was plotting with defendant to harm him. Indeed, apart from his testimony about his belief that the eye contact between the two suspects indicated that they were plotting, Gutierrez testified to no facts tending to suggest that Munoz posed a risk. Although we can envision circumstances in which the state will be able to prove facts permitting the conclusion that an officer's belief that two suspects were engaging in nonverbal communication through eye contact to plan an attack against the officer was objectively reasonable, the state adduced no such facts here.

Beyond that, although we have recognized that the presence of multiple people can heighten an officer's safety concern so as to permit a patdown of one person, we have made that recognition only when additional indications of violence, such as presence of a weapon, support the officer's safety concern. *See State v. Hendricks*, 213 Or App 260, 367-68, 160 P3d 1014 (2007) (relying on defendant's proximity to another person and access to a weapon in determining the reasonableness of officer's safety concern); *see also Miglavs*, 337 Or at 13-14. In contrast, here, Gutierrez testified to no facts that would indicate that Munoz had any association with weapons or posed any risk of violence, even though Gutierrez knew Munoz from previous encounters. On the contrary, the only evidence about Munoz's conduct was that Munoz was calm, friendly, and advising defendant to "calm down." Under those circumstances, the fact that two

suspects were present and made eye contact with each other does not support an objectively reasonable belief that defendant might pose an immediate danger to Gutierrez.

That defendant and Munoz "stood there" looking at Gutierrez also does not reasonably suggest that defendant posed an immediate danger. Gutierrez had stopped them to cite them for jaywalking. They had no choice but to stand there; that they complied with Gutierrez's directive to stop "cannot serve to create a threat that justifies a search for officer safety." *State v. Dyer*, 157 Or App 326, 332, 970 P2d 249 (1998). Further, the fact that they looked at or toward the officer who had stopped them—something likely to occur in any stop—does not, without more, make it reasonable to think that defendant, in particular, was dangerous.

Finally, the location of the stop, standing alone, also does not give rise to a reasonable belief that defendant might pose an immediate danger. Although it was about 50 yards away from a motel where Gutierrez had found drugs and weapons in the past, Gutierrez testified to no fact that would make it reasonable to think that defendant (or Munoz) was connected to that motel.

We turn to the next part of our task under *Bates*: whether the circumstances that the state proved were known to Gutierrez, when viewed collectively, made it objectively reasonable to think that defendant might pose an immediate threat of serious physical injury to him, so as to permit a patdown as a reasonable safety measure. We conclude that the collective circumstances did not make it objectively reasonable for Gutierrez to think that defendant might pose an immediate threat of serious physical danger. Collectively, the circumstances do not tend to point toward an objectively reasonable conclusion that defendant was carrying a weapon, that he might be prepared to use a weapon in the context of Gutierrez's jaywalking stop, or that defendant might otherwise pose a risk of serious physical injury to Gutierrez or someone else. As a result, the facts proved by the state fall short of creating a reasonable belief that this defendant posed an immediate threat.

We recognize that Gutierrez faced a high level of uncertainty when he confronted Munoz and defendant.

Further, we understand that that level of uncertainty could make a reasonable officer apprehensive for his safety. As Gutierrez himself testified, he "didn't know exactly what [defendant and Munoz] were trying to do," and this particular stop did not feel the same to him as the thousands of others that he had made during his nine-year career. However, Article I, section 9, does not permit a patdown search for the purpose of alleviating uncertainty or dispelling the understandable apprehension that an officer may experience as the result of uncertainty. Such a search is permissible only if the specific, articulable facts about the encounter make it reasonable to think that the person to be searched might pose an immediate threat of serious physical injury to the officer or some other person present. *Bates*, 304 Or at 524. The facts proved by the state did not meet that standard, and, thus, the trial court erred by concluding otherwise.

Reversed and remanded.