Argued and submitted December 21, 2016, reversed and remanded March 8, 2017

### STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

### JOHN ALAN KENNEDY,
*Defendant-Appellant.*

Multnomah County Circuit Court
14CR14674; A159592

392 P3d 382

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. With him on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Duncan, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

## GARRETT, J.

Defendant appeals a judgment of conviction on one count each of carrying a concealed weapon, ORS 166.240, and felon in possession of a restricted weapon, ORS 166.270(2). Defendant assigns error to the trial court's denial of his motion to suppress evidence. The issue on appeal is whether the trial court correctly ruled that a police officer's patdown of defendant was justified by the officer-safety exception to the warrant requirement. For the reasons explained below, we conclude that, under the totality of the circumstances, the officer did not have an objectively reasonable belief that defendant posed an immediate threat of serious physical injury. Accordingly, we reverse and remand.

The facts are undisputed. Two witnesses called police regarding a vehicle that appeared to have driven off the road and into a thicket of blackberry bushes. Officer Dunbar responded to the scene and observed an empty vehicle with dealer license plates in the bushes, at the end of a rough dirt road. Dunbar called the dealer and learned that the vehicle had been stolen. The witnesses described two men who had been with the vehicle earlier and had then left the scene. While Dunbar was waiting for a tow truck to arrive, defendant walked up the road in the direction of Dunbar and the witnesses. The witnesses identified defendant as one of the men associated with the vehicle.

Dunbar drew his firearm and ordered defendant to get on his knees and place his hands on his head. Defendant, who was approximately 30 feet away, complied, and remained in that position for several minutes. When a second officer arrived at the scene a few minutes later, Dunbar patted defendant down and discovered a switchblade knife. Defendant was charged with carrying a concealed weapon, ORS 166.240, and felon in possession of a restricted weapon, ORS 166.270(2).

Defendant moved to suppress the evidence of the knife, arguing that the stop was unlawful because Dunbar lacked reasonable suspicion that defendant had committed a crime, and that the patdown was unlawful because it was

not supported by reasonable suspicion that defendant posed a threat of serious physical injury at the time of the search. At the hearing, Dunbar testified that he was concerned for his safety because his cover officer was "minutes away, at best"; he knew from training and experience that "someone stealing a car can be extremely dangerous" and possess weapons; he found it unusual that defendant returned to the scene (a dead-end road with no businesses); the other person whom the two witnesses had connected to the car was unaccounted for; and defendant was walking straight toward him.

The trial court denied defendant's motion. As to the patdown, the trial court explained:

> "While the officer was waiting for a tow, he saw the defendant walking back on foot without a vehicle, again, in an area where there's no real other reason for somebody to be there and, therefore, it was reasonable for him to suspect that the defendant was, in fact, associated with the crime of the stolen vehicle.

> "With regard to the safety of the officer, the officer, I find, subjectively believed that the defendant posed an immediate threat to his physical safety, and that was objectively reasonable for the reasons I have already articulated and in addition to the fact that the officer testified that from his training and experience car thieves carry weapons. In this case, this particular individual, who he associated with the theft of the vehicle, was returning to the scene on foot and walking directly towards him. The other person was unaccounted for. All of those things made it objectively reasonable for the officer to conduct the patdown that he did."

Defendant was convicted on all charges. On appeal, in a single assignment of error, he challenges the trial court's denial of his motion to suppress. Defendant does not contend that Dunbar lacked reasonable suspicion to stop him; he does challenge, however, the legality of the warrantless patdown. We review for legal error and are bound by the trial court's factual findings if they are supported by evidence in the record. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993).

Under Article I, section 9, of the Oregon Constitution,[1] Dunbar's warrantless patdown of defendant was unlawful unless it fell within a recognized exception to the warrant requirement. *See State v. Rudder*, 347 Or 14, 21, 217 P3d 1064 (2009) ("It is well settled * * * that a warrant normally is a prerequisite to any search and that, as a general rule, warrantless searches are *per se* unreasonable unless they fall within one or another of the established exceptions to the warrant requirement."). The state relies on the well-established "officer safety" exception, which allows an officer to

> "take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present."

*State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987). The state bears the burden of proving that an officer's search is justified by the officer-safety exception. *State v. Thomas*, 276 Or App 334, 337, 367 P3d 537 (2016). Satisfying that burden requires the state to prove both that the officer subjectively believed that the defendant posed an immediate threat of serious physical injury and that the officer's belief was objectively reasonable. *Id.* In this case, defendant does not appear to challenge the trial court's finding that Dunbar was subjectively concerned for his safety; rather, defendant argues that Dunbar's concern was not objectively reasonable.

Determining whether an officer's safety concern was objectively reasonable requires us to consider the totality of the circumstances as they reasonably appeared to the officer at the time of the warrantless search. *State v. Jackson*, 190 Or App 194, 199, 78 P3d 584 (2003), *rev den*, 337 Or 182 (2004); *see also Bates*, 304 Or at 525 (explaining that the underlying question is whether "any of the circumstances

---

[1] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

confronted by the officer either individually or collectively justify a reasonable suspicion that the defendant posed an immediate threat"). "To be objectively reasonable, the officer's safety concerns must be based on facts specific to the particular person searched, not on intuition or a generalized fear that the person may pose a threat to the officer's safety." *State v. Smith*, 277 Or App 298, 303, 373 P3d 1089, *rev den*, 360 Or 401 (2016) (internal quotation marks omitted).

According to the state, Dunbar's testimony at the suppression hearing establishes objectively reasonable grounds for his subjective belief that defendant posed a safety threat. Dunbar testified that (1) he suspected defendant of being a car thief; (2) he knew from training and experience that it is not uncommon for car thieves to be armed, and that they can be dangerous; (3) defendant walked directly toward him, in an area where defendant had no evident reason to be present; (4) a cover officer was at least several minutes away; and (5) defendant was believed to have an associate whose whereabouts were unknown. In response, defendant emphasizes that he was fully and immediately cooperative with Dunbar's commands, including by remaining on his knees with his hands on his head for several minutes. Defendant also argues that, to the extent that Dunbar's concern for safety was based on being the only officer at the scene, that concern dissipated when the cover officer arrived, and it was *after* that arrival that Dunbar patted down defendant.

We agree that the circumstances of the encounter could reasonably cause Dunbar to be apprehensive about defendant, and we are mindful of our obligation not to "uncharitably second-guess" the judgment that an officer must make in light of the circumstances as they appear at the time. *Bates*, 304 Or at 524 (police officers must frequently make life-or-death decisions in a matter of seconds, leaving "little or no time in which to weigh the magnitude of a potential safety risk against the intrusiveness of protective measures"). Nonetheless, we cannot agree that, in light of the totality of those circumstances, any fear that defendant posed an immediate safety threat was objectively reasonable *at the time* that Dunbar patted him down.

Notwithstanding Dunbar's suspicion that defendant was involved in a car theft and his more generalized understanding of car thieves, by the time of the patdown, the encounter had lasted several minutes, during which defendant was cooperative and in a submissive physical posture (on his knees, with his hands on his head). Although a person's "attitude and demeanor are just two circumstances" to be considered and are by no means dispositive, *State v. Miglavs*, 337 Or 1, 11-12, 90 P3d 607 (2004), defendant's lack of any aggression or suspicious movement, and his compliance with Dunbar's commands for a period of several minutes, are significant factors in this case, particularly given the absence of any information that defendant had engaged in earlier acts of violence. *See, e.g., State v. Rodriguez-Perez*, 262 Or App 206, 215-16, 325 P3d 39 (2014) (police officers lacked objectively reasonable suspicion for purposes of officer-safety doctrine where the defendant did not make any aggressive, hostile, or threatening movements, made no threatening remarks, and officers had no prior knowledge of whether the defendant had a reputation for violence or a history of being armed); *State v. Amell*, 230 Or App 336, 345, 215 P3d 910 (2009) (no reasonable suspicion of an immediate threat to officer safety where, despite digging between the seats of a vehicle, the defendant was "cooperative at all times, did not show hostility, and made no suspicious movements during his interaction with the police officers"); *State v. Dyer*, 157 Or App 326, 332, 970 P2d 249 (1998) (officer-safety exception did not apply where, "[o]ther than the fact that [the] defendant carried a knife and had a prior conviction for weapons possession, there [was] no evidence in the record that, while seated on the curb, [the] defendant posed any threat to [the officer]").

Moreover, by the time that Dunbar patted defendant down, Dunbar was no longer alone; the cover officer had arrived at the scene, further establishing the officers' control of the situation. *State v. Holdorf*, 250 Or App 509, 515, 280 P3d 404 (2012), *rev'd on other grounds*, 355 Or 812, 333 P3d 982 (2014) (citing presence of multiple officers as contributing to dissipation of safety concern). Although it is true that defendant was believed to have an associate whose location was unknown, we are not persuaded on this record

that that is sufficient for Dunbar to have formed an objectively reasonable belief that *defendant* posed an imminent threat at the time of the patdown. *See Smith*, 277 Or App at 305 ("[W]here a defendant cooperates with police, in the absence of any threatening behavior by the defendant, generalized safety concerns (in other words, facts that are not particular to the defendant) are insufficient to justify an officer safety search.").

For the foregoing reasons, the trial court erred in denying defendant's motion to suppress. We further conclude that that error requires reversal. *See State v. Miller*, 267 Or App 382, 398, 340 P3d 740 (2014) ("Whenever the state has obtained evidence following the violation of a defendant's Article I, section 9, rights, it is presumed that the evidence was tainted by the violation and must be suppressed."). The knife was central to the state's charges against defendant. Moreover, the state does not argue that any other exception to the warrant requirement applies.

Reversed and remanded.