Argued and submitted June 29, reversed and remanded August 30, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JUSTIN MICHAEL GAYLOR,
*Defendant-Appellant.*

Polk County Circuit Court
15CR02951; A159959

404 P3d 1140

Vanessa A. Areli, Deputy Public Defender, argued the cause for appellant. With her on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Christopher A. Perdue, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Keith L. Kutler, Assistant Attorney General.

Before Garrett, Presiding Judge, and Lagesen, Judge, and Edmonds, Senior Judge.

## LAGESEN, J.

Defendant conditionally pleaded guilty to one count of unlawful possession of methamphetamine, ORS 475.894, reserving the right to appeal the trial court's denial of his motion to suppress the evidence that he possessed the drug. On appeal, defendant argues that the trial court erred when it determined that the warrantless handcuffing and search of defendant that led to the discovery of the methamphetamine were justified under the "officer safety" exception to the warrant requirement of Article I, section 9, of the Oregon Constitution and that, as a result, defendant was not entitled to suppression of the evidence. We review to determine whether the trial court's factual findings are supported by any evidence in the record, and whether the trial court correctly applied applicable principles of law, *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993), and reverse and remand.

The pertinent facts generally are not in dispute. Sergeant Jenkins was on afternoon patrol in west Salem when he observed a car parked in the driveway of a house that Jenkins knew was abandoned. Defendant and Glazebrook were in the car. Finding that suspicious, in part because of a burglary in the area 10 days earlier, Jenkins decided to investigate and "just see what was going on." Jenkins pulled into the next driveway up the road and parked, letting dispatch know that he was "going to be out on a suspicious vehicle." As he did that, he noticed in his side mirror that defendant and Glazebrook had gotten out of the car, and that defendant was walking along the road toward Jenkins's car. Jenkins turned his car around and drove back to where the car was parked in the abandoned house's driveway, and stopped his car in the road because there was no other place to pull over. In doing so, he passed defendant, who turned around and started walking back toward Jenkins. Defendant walked in the road itself, rather than along the shoulder.

Jenkins introduced himself to defendant and Glazebrook and asked them to remove their hands from their pockets and stand in a particular place. They complied. Jenkins asked them what was going on. They told him that the car had broken down, probably because of

transmission issues. Jenkins explained that he was contacting them because of a recent burglary in the area and asked for their identification. Glazebrook stated that he would give Jenkins his identification and began to "dig inside" the car. Glazebrook was "bent over into the vehicle" and Jenkins was unable to "see his hands or his upper body, or what he's doing." Meanwhile, defendant, using a "sharp" tone, inquired whether he was required to provide his identification to Jenkins, asking Jenkins whether he was suspected of a crime. Jenkins viewed defendant's questions as a challenge and called for backup. He also decided to cite defendant for the violation of "unlawful[] placement of a pedestrian in the roadway," which he believed defendant had committed by walking in the roadway, rather than on the shoulder. Jenkins explained to defendant that he had to provide his identification because Jenkins was citing him. Once Jenkins explained that he was citing defendant, defendant provided Jenkins with his identification.

During the exchange between Jenkins and defendant, Glazebrook climbed over a fence and started jogging away. Jenkins shouted "Hey," Glazebrook responded "I'll be right back," and kept on jogging, disappearing from view. Jenkins did not think that Glazebrook would ever come back, but, because Jenkins did not know what Glazebrook's intentions were in running away, he feared that Glazebrook might pose a risk to his safety.[1]

As soon as Glazebrook ran away, Jenkins decided to detain defendant. He did so because of defendant's initial conduct of walking away from the car and then returning to it, because of defendant's "challenging demeanor" in asking about whether he had to provide his identification and whether he was suspected of a crime, and because of Glazebrook's flight. Jenkins was concerned that, if he simply cited defendant for the pedestrian violation that he had observed, defendant would leave the scene, meet up with Glazebrook, and come back and pose a threat to Jenkins. He directed defendant to put his hands behind his back. Defendant complied and Jenkins handcuffed him and conducted a patdown. During the patdown, Jenkins felt a long

---

[1] Officers later found Glazebrook hiding in a ditch.

cylinder in defendant's left front pocket. Concerned that the cylinder "was a screwdriver or shank, some type of stabbing instrument," Jenkins reached into defendant's pocket to remove it because he thought it could be a risk to personal safety. That cylinder, as Jenkins discovered, was not a screwdriver or a shank, but a methamphetamine pipe. Defendant's possession of that pipe, and the methamphetamine residue on it, led to the charge against him.

As noted, defendant moved to suppress the evidence of the methamphetamine pipe, arguing that it was the product of an unconstitutional warrantless seizure (the handcuffing) and two unconstitutional warrantless searches (the patdown and subsequent inspection of the contents of defendant's pocket). The state asserted, and the trial court agreed, that the seizure and searches were justified by the officer safety exception to the warrant requirement. Defendant challenges that determination on appeal.

The officer safety exception to the warrant requirement of Article I, section 9, permits an officer to seize or search a person without a warrant if the officer subjectively believes that the person poses "an immediate threat of serious physical injury" to the officer or others present and that subjective belief is objectively reasonable under the totality of the circumstances known to the officer. *State v. Kennedy*, 284 Or App 268, 272-73, 392 P3d 382 (2017). "To be objectively reasonable, the officer's safety concerns must be based on facts specific to the particular person searched [or seized], not on intuition or a generalized fear that the person may pose a threat to the officer's safety." *State v. Smith*, 277 Or App 298, 303, 373 P3d 1089, *rev den*, 360 Or 401 (2016) (internal quotation marks omitted).

Here, even if Jenkins had the requisite subjective belief that defendant posed an immediate threat of serious physical injury to Jenkins,[2] that belief was not objectively reasonable. None of defendant's conduct tended to suggest

---

[2] In concluding that the officer safety exception applied, the trial court necessarily found that Jenkins had the requisite subjective belief. Defendant challenges the sufficiency of the evidence to support that factual finding. We do not address that challenge because we conclude that that subjective belief, if Jenkins in fact had it, was not objectively reasonable.

that he posed a threat of harm to Jenkins. On the contrary, even though defendant used a "sharp" voice when asking whether he was required to provide his identification to Jenkins and whether he was suspected of a crime, defendant answered Jenkins's questions and complied with all of Jenkins's directives, and there is no other indication that Jenkins had any particularized reason to think that defendant posed an immediate risk of serious physical harm to Jenkins by the time he conducted the challenged seizure and searches, at which point Jenkins was aware that defendant had been cooperative with him.

Although each officer safety case necessarily must turn on its own facts, the circumstances in this case greatly resemble those in *Kennedy*, as defendant points out. There, we concluded that an officer's belief that the defendant, who was suspected of being a car thief, posed an immediate threat of physical injury was not objectively reasonable where the defendant, like defendant here, walked up the road to talk to the officer conducting the investigation and cooperated with the officer's investigation. 284 Or App at 270. We explained that the "defendant's lack of any aggression or suspicious movement, and his compliance with [the officer's] commands for a period of several minutes" were "significant factors" supporting the conclusion that it was not objectively reasonable to believe that the defendant posed an immediate threat of serious physical injury at the time of the asserted officer safety search. Those same "significant factors" are present here.

In arguing for a contrary conclusion, the state points to our decisions in *State v. Madden*, 283 Or App 524, 390 P3d 524, *rev allowed*, 361 Or 800 (2017), and *State v. Pope*, 150 Or App 457, 946 P2d 1157 (1997), *rev den*, 327 Or 521 (1998), and relies heavily on Glazebrook's unexpected flight from the scene. Specifically, the state contends that, under *Pope* and *Madden*, the possibility that Glazebrook and defendant might act in concert to harm Jenkins, who was alone, made it objectively reasonable for Jenkins to believe that defendant posed an immediate threat of serious physical injury. The flaw in that argument is that, in *Pope* and *Madden*, the particular circumstances were such that it was objectively reasonable for the officer to think that the

defendant, in part because of the other person's presence, posed an immediate threat of serious physical injury to the officer or another present.

In *Madden*, the issue was whether the officer safety exception justified the warrantless handcuffing of the defendant, who was present at a house where officers were executing a warrant. 283 Or App at 532-35. We concluded that it did. The defendant was in a car parked in front of the house with a person who officers suspected, based on past encounters, was armed and dangerous. *Id*. Relying on past cases discussing the particular dangers associated with the execution of a warrant, we reasoned that the execution of a warrant at a known drug house presented a dangerous situation, and that the defendant's presence outside the house with a person reasonably believed to be armed and dangerous made it objectively reasonable to think that posed a threat of harm to officers, so as to justify his detention while officers secured the premises. *Id*.

Similarly, in *Pope*, we held that the officer safety exception authorized an officer to extend the traffic stop of the defendant, a motorcyclist, by asking whether he was armed and conducting a frisk. 150 Or App at 460. There, the officer reasonably believed that the defendant was likely to be armed and dangerous; the defendant was affiliated with a motorcycle gang known for violent acts; and the defendant was traveling with another likely gang member who stopped 200 feet away, making it difficult for the officer to monitor that person's conduct. *Id*. at 459-63. We concluded that those particular circumstances made it reasonable for the officer to believe that the defendant posed an immediate threat of serious physical injury. *Id*. at 463.

Here, significantly, unlike in *Madden* and *Pope*, there was no indication that either Glazebrook or defendant was armed and dangerous. Further, unlike in *Madden* and *Pope*, where the defendants' dangerous associates remained present with the defendants, Glazebrook *left* the scene in a manner that—Jenkins admitted—indicated that he would not be returning. That diminishes the objective reasonableness of any belief that defendant and Glazebrook might act in concert to harm Jenkins. At best, Jenkins was uncertain

about Glazebrook's location. But, as we emphasized in *Kennedy*, a warrantless search or seizure of a person based on officer safety concerns requires an objectively reasonable belief that *that person* poses an immediate threat of harm at the time of the pertinent warrantless search or seizure. 284 Or App at 274-75. Uncertainty about the location of the person's associate, without more, does not make it objectively reasonable for an officer to believe that the person poses a threat of immediate physical harm to the officer. *Id.* at 274-75; *see Smith*, 277 Or App at 305 ("[W]here a defendant cooperates with police, in the absence of any threatening behavior by the defendant, generalized safety concerns (in other words, facts that are not particular to the defendant) are insufficient to justify an officer safety search."). Simply put, Glazebrook's disappearance, and the uncertainty that it caused Jenkins, did not make it reasonable for Jenkins to think that *defendant* posed an immediate threat of serious physical injury, where defendant was otherwise cooperative with Jenkins and there were no other indications that defendant posed a danger.

The trial court thus erred when it concluded that the warrantless seizure and searches of defendant were justified by the officer safety exception to the warrant requirement and, therefore, erred in denying defendant's motion to suppress.

Reversed and remanded.