ORTEGA, P. J.
*360 In this consolidated appeal, defendant challenges his conviction for unlawful possession and unlawful delivery of a Schedule II controlled substance, ORS 475.752, and the revocation of his probation.[1] Defendant asserts that the trial court erred in denying his motion to suppress evidence obtained during a traffic stop that he contends was unlawfully extended because the "officer-safety" exception *420 to the warrant requirement did not justify the officer's request that he get out of his car so the officer could remove a folding knife from his pocket. We agree and, accordingly, reverse and remand.
We review the denial of a motion to suppress for legal error and are bound by the trial court's explicit and implicit factual findings if evidence in the record supports them. State v. Ehly , 317 Or. 66, 74-75, 854 P.2d 421 (1993). Accordingly, we state the facts consistently with the trial court's factual findings.
Officer Rogers stopped defendant in Washington County for failure to make a complete stop at a stop sign. Rogers approached defendant on the driver's side and asked for his license, registration, and proof of insurance. Defendant produced his license. Rogers began questioning defendant about the car because defendant had an Oregon license but the car had Washington plates. Defendant told Rogers that the car belonged to his girlfriend. During the encounter, Rogers found that defendant was "abnormally nervous," and while defendant was searching for his documents, Rogers asked for consent to search the car. Defendant questioned why that was necessary, and Rogers noticed that defendant had nervous tics and that his hands had begun to shake. However, defendant was cooperative and did not appear to be under the influence of any intoxicants.
Defendant told Rogers that he could not find the registration and insurance information and, soon after, *361 Officer Matias arrived at the scene. It is unclear from the record whether he showed up on his own or in response to a request for backup. When Matias approached the passenger side of the car, he noticed a standard folding knife in defendant's front pocket, which was folded with only a small portion exposed. Rogers described the knife as a "standard folding knife" with a pocket clip, which he believed could cause serious physical injury. Matias mentioned the knife to Rogers, who then asked defendant to step out of the car even though he was not under arrest; at that point, Rogers was only concerned about his safety and defendant's ability to use the knife "very quickly." According to Rogers, "watching [defendant's] *** nervous behaviors and the elusive questions about looking in the car," and the fact that defendant did not disclose that he had a knife, added to the officers' concern for their safety. Defendant got out of the car, walked behind it, and Rogers "put him in a standard position for control and a patdown to remove the knife."
After removing the knife, Rogers continued to pat down defendant's pockets. Rogers felt a large container in the same pocket that had contained defendant's knife, but could not identify it as a weapon. When Rogers asked defendant what it was, defendant told him it was a pill bottle, and defendant consented to the removal of the bottle from his pants pocket. Rogers asked defendant if he could check to ensure that the pills matched defendant's prescription because he was concerned that defendant was illegally selling them based on how they were packed. Defendant consented, and Rogers confirmed that the pills did not match the prescription.
Matias then asked defendant for consent to a search of his car because, at that point, the investigation had shifted to finding evidence of "sale or distribution." Defendant consented, and Rogers found a "tin foil with burn marks on it, *** black snaking, which is consistent with *** either smoking pills or heroin use," and defendant's cell phone. After defendant consented to a search of his phone, Rogers read incriminating text messages between defendant and two other individuals and, when Rogers asked him to explain the messages, defendant confessed to selling the pills illegally. Rogers then arrested defendant, administered Miranda *362 warnings, and took him to the police station. Defendant was charged with unlawful delivery of a Schedule II controlled substance (Count 1) and unlawful possession of a Schedule II controlled substance (Count 2).
Defendant moved to suppress the pill bottle and its content that were found in his pocket, the drug paraphernalia that was in his car, the incriminating messages on his phone, and his confession to Rogers and Matias. At the subsequent hearing, defendant argued that the traffic stop was unlawfully extended, and he was therefore unlawfully seized, when the officer asked him to get out *421 of the car so that he could remove the folding knife. He also contended that, once the knife was removed, the subsequent patdown of his pockets was an unlawful search, and all the evidence obtained should have been suppressed. The state countered that, under the officer-safety exception, both the seizure and the search were lawful.
The court denied the motion after adopting the state's view of the evidence. The court first concluded that the traffic stop was based on probable cause and therefore was lawful. Further, the court concluded that the officers' safety concerns upon seeing the knife did not dissipate after the knife was removed, and defendant consented to the searches at each critical juncture. In all events, the court concluded that the evidence would have inevitably been discovered; Rogers testified, and the court found credible, that, even without the knife, Rogers still would have had to conduct a patdown for safety reasons and would have discovered the evidence.
After the court denied the motion, defendant waived his right to a jury trial and proceeded to a stipulated facts trial, reserving his right to appeal the trial court's ruling. He was convicted on both counts, and the court entered a judgment of conviction and a judgment revoking his probation.
Article I, section 9, of the Oregon Constitution allows an officer to lawfully stop a person for a noncriminal traffic violation to investigate the offense and issue a citation without a warrant. State v. Rodgers/Kirkeby , 347 Or. 610, 623-24, 227 P.3d 695 (2010). However, the officer may detain the *363 person only "for the time it takes [the] officer to complete an investigation that is reasonably related to the basis for the stop." State v. Sherman , 274 Or. App. 764, 773, 362 P.3d 720 (2015). If the officer engages in any other activity, he "must be justified on some basis other than the traffic violation." Rodgers/Kirkeby , 347 Or. at 623, 227 P.3d 695. (Emphasis in original).
The officer-safety exception to the warrant requirement allows an officer to lawfully seize or search a person under Article I, section 9, if the officer's subjective belief that a person poses "an immediate threat of serious physical injury" is objectively reasonable under the totality of the circumstances known to the officer at that time. State v. Kennedy , 284 Or. App. 268, 272-73, 392 P.3d 382 (2017). To be objectively reasonable, the state must prove that "the officer's safety concerns [are] based on facts specific to the particular person searched, not on intuition or a generalized fear that the person may pose a threat to the officer's safety." State v. Smith , 277 Or. App. 298, 303, 373 P.3d 1089, rev. den. , 360 Or. 401, 381 P.3d 844 (2016) (internal quotation marks omitted).
Here, defendant asserts that he was unlawfully seized when he was ordered out of his car, because the officer-safety exception to the warrant requirement did not apply. He contends that the presence of a folding knife and the fact that he was "abnormally nervous" did not support an objectively reasonable basis to seize him. Further, even if we were to conclude that he was lawfully seized, defendant argues that the subsequent search was also unlawful because, once Rogers removed the knife from his pocket, there was no further basis for a concern about officer safety, and Rogers could not continue the patdown. Defendant contends that his consent, which led to the discovery of the controlled substances in the pill bottle, the drug paraphernalia in the car, the text messages on his phone, and his incriminating statements, was the unattenuated product of the preceding illegality, and, for that reason, that evidence should have been suppressed. Defendant also argues that the evidence would not have been inevitably discovered, because the state failed to demonstrate that towing and inventorying the car are part of proper investigatory procedures for failure to produce proof of insurance and, even if they were, *364 such actions by police would not necessarily have resulted in defendant's consent to the search of his personal items or his incriminatory statements.
The state counters that, under the totality of the circumstances in this case, the officer-safety exception applied. The state emphasizes that defendant was abnormally nervous, had a folding knife in his pocket that he did not disclose to the officers, and was evasive *422 in answering questions, which supported Rogers's belief that defendant posed a risk of harm to him and Matias and justified Rogers's request that defendant step out of the car so that he could remove the knife. The state further argues that, even after the knife was removed, the exception still applied because, among other reasons, Rogers was concerned that defendant possessed additional weapons. In the alternative, the state asserts that, because defendant could not produce proof of insurance, the car would have been inventoried and towed, and Rogers would have conducted a pat-down search because he would be "in close proximity to defendant for an extended period of time." The state argues that, regardless of whether defendant was unlawfully seized or searched, he validly consented to the search of his pockets, his prescription bottle, his car, and his cell phone, and therefore the challenged evidence was lawfully obtained. We take a different view.
Here, despite Rogers's subjective belief that defendant posed an immediate threat to him and Matias, that belief was not objectively reasonable. State v. Dyer , 157 Or. App. 326, 970 P.2d 249 (1998) informs our assessment of the circumstances here. In Dyer , we concluded that the officer-safety exception to the warrant requirement did not support a limited search of the defendant's car. 157 Or. App. at 332, 970 P.2d 249. The defendant was stopped for driving carelessly, and the officer decided to cite him. Id . at 328, 970 P.2d 249. At the time of the stop, the defendant was not in his car and, while the defendant was retrieving his registration and proof of insurance from the car, the officer noticed a "large folding knife in a sheath on his belt." Id. The officer had the defendant sit on the curb while he reviewed the information from dispatch. Id . at 329, 970 P.2d 249. After learning that the defendant had been convicted *365 of unlawful possession of a weapon in public, coupled with the fact that he appeared to be an "outlaw biker," the officer developed officer safety concerns and asked for consent to search the car, and proceeded to search even when the defendant refused consent. Id. In reversing the trial court's denial of a motion to suppress evidence derived from that search, we concluded that,
"other than the fact that defendant carried a knife and had a prior conviction for weapons possession, there [was] no evidence in the record that, while seated on the curb, defendant posed any threat to [the officer]. [The] [d]efendant had been cooperative and had not *** said or done anything that could be interpreted as creating an immediate threat of serious physical harm."
Id. at 332, 970 P.2d 249.
Although Dyer involved a search of a car rather than a person, it recognizes that the presence of a knife alone, under circumstances where a defendant is cooperative and makes no furtive or threatening movements, does not establish an objectively reasonable basis to support invocation of the officer-safety exception. See also State v. Rodriguez-Perez , 262 Or. App. 206, 215-16, 325 P.3d 39 (2014) (concluding that the officer-safety exception did not apply to justify frisking the defendant because he was not "aggressive, hostile, or threatening" and did not make any "furtive movements such as reaching into his pockets *** as if to retrieve a weapon"). Here, the evidence establishes the presence of a folding knife in defendant's pocket, when he was inside a car and not in any position to harm officers outside the car. Although the state points to defendant's "abnormal" nervousness, evasion of questions, and failure to proactively inform officers of the folding knife, defendant was otherwise cooperative and made no movements toward the knife, and the officers had not asked him about weapons. The evidence on which the state relies supports no more than general concerns for the officers' safety, rather than specific facts demonstrating that defendant posed a threat. As a result, any subjective belief that defendant posed an immediate threat was not objectively reasonable, and the order to exit the car was not justified by the officer-safety exception.
*366 Moreover, the state failed to prove that defendant's consent to search the pill bottle, his car, and his cell phone and subsequent confession were the unattenuated product of the preceding illegality. Evidence obtained based on a consent to search must *423 be suppressed if an unlawful seizure preceded the search, unless the state can prove that the consent was voluntary and "was not the product of police exploitation" of the unlawful seizure. State v. Unger , 356 Or. 59, 85-86, 333 P.3d 1009 (2014).
"To determine whether the state has met its burden of showing that [the] defendant's consent was not the product of the unlawful police conduct, we consider the totality of the circumstances, including the temporal proximity between that misconduct and the consent, and the existence of any intervening or mitigating circumstances. We also consider the nature, purpose, and flagrancy of the misconduct."
Id. at 88, 333 P.3d 1009.
Here, the temporal proximity-that is, the time between the unlawful seizure and search and the consent to search the pill bottle, car, and cellphone-weighs in favor of concluding that defendant's consent was invalid because it was the product of police exploitation of the unlawful seizure. Unger , 356 Or. at 90, 333 P.3d 1009. There were no intervening or mitigating circumstances between the time of consent and the unlawful police conduct, and Rogers provided Miranda warnings to defendant only after all of the incriminating evidence was discovered. Moreover, the officer was able to leverage what he discovered in the unjustified seizure to shift the interaction from one concerned with officer safety to one aimed at finding evidence of "sale and distribution" by asking questions and seeking consent to search the pill bottle, car, and cellphone. Consequently, defendant's consent to search the pill bottle, his car, and his phone was invalid.
The trial court alternatively concluded that the evidence would inevitably have been discovered based on Rogers's testimony that, because defendant may not have had proof of insurance, defendant would have been searched and the car would have been towed and inventoried. We conclude otherwise.
*367 When the state obtains evidence in violation of a person's rights under Article I, section 9, "it is presumed that the evidence was tainted by the violation and must be suppressed." State v. Jackson , 268 Or. App. 139, 151, 342 P.3d 119 (2014). This is a rebuttable presumption that the state can overcome by establishing that "the police inevitably would have obtained the evidence through lawful procedures." Unger , 356 Or. at 64, 333 P.3d 1009 (internal citations omitted). "To satisfy its burden ***, the state [is] required to show by a preponderance of evidence (1) that certain proper and predictable investigatory procedures would have been utilized in the instant case, and (2) that those procedures inevitably would have resulted in the discovery of the evidence in question." State v . Hensley , 281 Or. App. 523, 535, 383 P.3d 333 (2016) (internal quotation marks omitted). The state cannot meet that burden by merely showing "that evidence might or could have been otherwise obtained." Id. (internal quotation marks omitted). Instead, a "conclusion that predictable investigatory procedures would have produced the evidence at issue must be substantiated by factual findings that are fairly supported by the record." Id. (internal quotation marks omitted).
Here, the state failed to meet its burden. Rogers testified that, if he was able to prove that defendant did not have insurance, defendant would not have been free to leave, that he would have done a patdown of defendant because they were in close proximity, and that, based on an inventory of the car, he would have discovered the remaining evidence. The state, however, failed to establish that "certain proper and predictable investigatory procedures" would inevitably have resulted in a search of defendant and a tow and inventory of the car. Further, even if the state had established that a search, tow, and car inventory were inevitably a predictable part of proper procedure, the majority of the evidence-the pills in the pill bottle, the text messages on his cell phone, and his incriminating statements-would not necessarily have inevitably been discovered because that evidence was only obtained when defendant consented to a search of his pockets, car, and cell phone after he was unlawfully seized and searched, and it is not clear that defendant would have consented to those searches if his car was being towed for *368 *424 failure to produce proof of insurance. Consequently, because the state failed to meet its burden, all the evidence obtained by Rogers once defendant was asked to get out of his car for a pat-down search should have been suppressed.
Reversed and remanded.

Case No. C152472CR involves defendant's convictions of unlawful possession and unlawful delivery of a Schedule II controlled substance. Case No. C142256CR concerns the revocation of his probation on convictions of sexual abuse in the third degree and burglary in the first degree.